1    UNITED STATES DISTRICT COURT
2    DISTRICT OF PUERTO RICO

3    ORIENTAL FINANCIAL GROUP INC.,
4    ORIENTAL BANK AND TRUST, and
5    ORIENTAL FINANCIAL SERVICES
6    CORP.,                                     Civil No. 10-1444 (JAF)

7        Plaintiffs,

8        v.

9    COOPERATIVA DE AHORRO Y CRÉDITO
10   ORIENTAL,

11       Defendant.

12

13                       **<u>OPINION AND ORDER</u>**

14       Plaintiffs bring this action for federal service mark infringement under 15 U.S.C.

15   § 1125(a); service mark dilution under § 1125(c); and cyberpiracy under § 1125(d).  (Docket

16   No. 1.)  Plaintiffs also allege violations of the Puerto Rico Trademark Act of 2009, Law 169 of

17   December 16, 2009,[1] and unfair competition and deceptive trade practices under 31 L.P.R.A.

18   § 5141 (1990).  (Id.)  Defendant answered and counterclaimed for relief (Docket No. 37), and

19   Plaintiffs moved to dismiss that counterclaim (Docket No. 43).

20       Plaintiffs also moved for preliminary injunction (Docket No. 3), and Defendant opposed

21   (Docket No. 12).  Plaintiffs responded to the opposition (Docket No. 25), and Defendant replied

22   (Docket No. 38).  We held a hearing on that motion on September 15 through 17, 2010.  (See

---

[1]  An English translation of Law No. 169, of December 16, 2009, is available at
http://www.oslpr.org/download/en/2009/A-0169-2009.pdf.

Civil No. 10-1444 (JAF)                                                                -2-

Docket Nos. 47–49.)  At the end of the hearing, we asked all parties whether any objected to

our conversion of the hearing into a bench trial on the merits of Plaintiffs' claims, as to liability

only.  (Hr'g Tr. 51–53, Sept. 17, 2010.)  Plaintiffs affirmed that they did not object (id. at

52–53), as did Defendant (Docket No. 52).  This Opinion and Order, therefore, constitutes our

Federal Rule of Civil Procedure 52(a) findings of fact and conclusions of law.

# I.

## Factual and Procedural History

We derive the following facts from the parties' pleadings, motions, and exhibits (Docket

Nos. 1; 3; 12; 25; 37; 38; 43), and from testimony and evidence proffered at the hearing.

**A.**     **Parties and Their Service Marks and Dress**

**1.**     **Plaintiffs**

Oriental Financial Group Inc. ("OFG") is a publicly-owned financial holding company

organized and existing under the laws of Puerto Rico, with its principal place of business at 997

San Roberto Street, Professional Offices Park, San Juan, Puerto Rico 00926.  (Docket Nos. 1

at 2; 37 at 2.)  Oriental Bank and Trust ("Oriental Bank") is OFG's main subsidiary and is a

full-service commercial bank, with its main office located in San Juan, Puerto Rico, and with

forty-three branches throughout Puerto Rico.  (Docket Nos. 1 at 3–4; 37 at 2.)   Oriental

Financial Services Corp. is an OFG subsidiary and a Puerto Rico corporation engaged in

securities brokerage and investment banking services.  (Docket Nos. 1 at 2–4; 37 at 2.)

Plaintiffs and their various subsidiaries originated in Humacao, Puerto Rico; to this day,

Plaintiffs are generally perceived as Humacao-based financial institutions.

1        Plaintiffs offer financial services that are "customary for commercial banking

2    institutions," including checking and savings accounts, certificates of deposit, IRA accounts,

3    personal loans, and credit cards. (Hr'g Tr. 17, Sept. 15, 2010.) Plaintiffs have approximately

4    105,000 clients, approximately 1,700 of whom reside outside Puerto Rico, and they advertise

5    to Puerto Rico's general public. (Id. at 19–20.) Their branches are located throughout Puerto

6    Rico in areas of high population density, including San Juan, Ponce, and Mayagüez. (Id. at 17.)

7    Some of those branches were recently acquired from Eurobank, and Plaintiffs are currently

8    converting them to bear Plaintiffs' service marks. (Id. at 15–16.)

9        Plaintiffs first used "Oriental" in their corporate names via Oriental Bank's predecessor-

10   in-interest, which operated under the name "Oriental Federal Savings," beginning in 1964.

11   (Docket No. 1 at 3.) Since then, Plaintiffs have used the term "Oriental" in connection with a

12   variety of their businesses, services, and products. (See id. at 4.) Plaintiffs registered various

13   iterations of the term with the Puerto Rico Department of State Trademark Registry. (Hr'g Pls.'

14   Ex. 6.) Most recently, in 2010, Plaintiffs applied to both that office and the U.S. Patent and

15   Trademark Office to register "Oriental" for exclusive use in financial and banking services.

16   (Docket No. 1 at 5.) In recent advertising, Plaintiffs have used only the word "Oriental" in

17   marking their services, as opposed to the earlier mark of "Oriental Group." (Hr'g Tr. 23–24,

18   Sept. 15, 2010.)

19       Plaintiffs also use a particular trade dress in advertising their services. Principal among

20   the trade dress features is the color orange, which Plaintiffs use to distinguish their brand from

21   competing banks. (See, e.g., Hr'g Tr. 47–48, Sept. 15, 2010.) Plaintiffs also adhere to a

Civil No. 10-1444 (JAF)                                                                    -4-

1    particular "look and feel and tone and manner" in their advertisements, which they describe as

2    "clean" and which contain images of "people in different life stages." (Id. at 30, 32, 52; see

3    also, e.g., Hr'g Pls.' Ex. 10.)

4          **2.    Defendant**

5          Cooperativa de Ahorro y Crédito Oriental is a non-profit organization organized under

6    the laws of Puerto Rico and duly authorized by the Public Corporation for the Supervision and

7    Insurance of Cooperatives in Puerto Rico to engage in "banking business" under the principles

8    of "cooperativism"—"a movement which is the driving force in the socioeconomic development

9    of communities, small business and people/members who have been marginalized or ignored

10   by commercial banking institutions." (Docket No. 37 at 15.) Its headquarters are located at

11   Calle Font Martelo, Humacao Centro Mall, Humacao, Puerto Rico 00742. (Id.)

12         Defendant offers various banking services, including checking and savings accounts,

13   certificates of deposit, IRA accounts, and limited loans and credit products. (See, e.g., Hr'g

14   Tr. 64–65, Sept. 16, 2010; Hr'g Def.'s Ex. 3.) It focuses on "low income customers" but does

15   not serve that clientele exclusively. (See, e.g., Hr'g Tr. 60, 62–63, Sept. 16, 2010.) It has seven

16   branches in Puerto Rico—two in Humacao, one in Loíza, one in Ponce, and three in Hato Rey.

17   (Hr'g Tr. 51–52, Sept. 16, 2010; Hr'g Def.'s Ex. 3.)

18         Defendant first used "Oriental" in its corporate name in 1966, and it assumed its current

19   name in 1973. (Docket No. 37 at 16.) It began using a shortened version of its name, "Coop

20   Oriental," in 1995. (Id. at 18.) On March 6, 2009, Defendant applied to the Puerto Rico

21   Department of State Trademark Registry to register "Coop Oriental" as a service mark. (Docket

1    No. 37 at 18.)   Defendant registered the current domain name for its website,

2    "cooporiental.com," in 2004.  (Hr'g Tr. 49, Sept. 16, 2010.)  It has since used that site to offer

3    and provide online services to its members. (See, e.g., id. at 63–64.)  There is no evidence that

4    Defendant has registered any other domain name.

5          Defendant also uses a particular trade dress in advertising its services.  Until 2009,

6    Defendant advertised itself using its full or shortened name, or both, in combination with pine

7    trees, a symbol of the cooperative movement.  (E.g., Hr'g Tr. 37–38, Sept. 16, 2010; Hr'g Pls.'

8    Exs. 23–24; Docket No. 38-3 at 11, 14.)  The colors used in the logo were yellow, blue, and

9    green, and Defendant used the color green in the signs at its branch locations. (Hr'g Pls.'

10   Exs. 23, 33.)  In 2009, however, Defendant "hired Concept Uno to design a modern logo,"

11   which features an image of two interlocking hands, one brown and one orange.  (Docket No. 37

12   at 18.)  Defendant also began using predominantly orange in its advertisements, on its website,

13   and on its storefront signs. (E.g., Hr'g Pls.' Exs. 22, 25, 27, 28, 31; Docket No. 25-1 at 33, 37.)

14   The term "Oriental" is now a more prominent feature in its logo—"Oriental" is larger than

15   "Coop" and is in black font, while "Coop" is in orange.  (Hr'g Tr. 38, Sept. 16, 2010; Hr'g Pls.'

16   Ex. 21.) In addition, Defendant now advertises with a tone and feel similar to that of Plaintiffs.

17   (See, e.g., Hr'g Tr. 64, Sept. 15, 2010; Hr'g Pls.' Ex. 13.  Compare Hr'g Pls.' Ex. 9, with Hr'g

18   Def.'s Ex. 3 (featuring photograph of same family).)

19   **B.    Alleged Infringement and Legal Dispute**

20         Beginning in 2009, Defendant launched an overhaul of its corporate image and a

21   geographical expansion of its services (e.g., Hr'g Tr. 35, Sept. 16, 2010), the combination of

Civil No. 10-1444 (JAF)                                                                    -6-

1    which, Plaintiffs claim, results in infringement on Plaintiffs' service mark and dress (see Docket

2    Nos. 3 at 2, 6–10; 25 at 3–4).  The overhaul includes the implementation of the new logo, color

3    scheme, and advertising campaign described above.  (See, e.g., Hr'g Tr. 52–64, Sept. 15, 2010;

4    Hr'g Tr. 39–42, 68–69, Sept. 16, 2010.)  As for the geographical expansion, since 2009,

5    Defendant has opened two new branches in Hato Rey and its first branch in the southern part

6    of Puerto Rico.  (Hr'g Tr. 33–34, 51–52, Sept. 16, 2010.)  Defendant is also preparing to build

7    a new headquarters in Humacao.  (Id. at 31.)

8          In 2010, Plaintiffs began noticing and documenting incidents of consumer confusion

9    between Plaintiffs' and Defendant's marks and services.  In several instances, customers phoned

10   or visited Plaintiffs' branches expecting to receive service on accounts they held with

11   Defendant.  (See generally Hr'g Tr. 124–37, Sept. 15, 2010; Hr'g Tr. 3–21, Sept. 16, 2010.)

12         On December 9, 2010, Plaintiffs' attorney sent a letter to Defendant, demanding that

13   Defendant cease and desist conduct allegedly violative of federal and Commonwealth trademark

14   laws, including the use of "Oriental" in its service mark and website.  (Hr'g Pls.' Ex. 37.)

15   Following a failed attempt to settle the matter (see Hr'g Tr. 4–5, Sept. 15, 2010), on March 25,

16   2010, Defendant sought declaratory judgment against Plaintiffs in a Commonwealth court

17   (Docket No. 12 at 3).  Plaintiffs successfully removed that case to this court, where it is

18   currently pending.  See Order Denying Motion to Remand to State Court, Cooperativa de

19   Ahorro y Crédito Oriental v. Oriental Fin. Grp., Inc., No. 3:10-cv-01343-CCC (D.P.R. June 30,

20   2010), ECF No. 16.  On May 21, 2010, Plaintiffs separately filed the instant suit.  (Docket

21   No. 1.)

Civil No. 10-1444 (JAF)                                                    -7-

1                                    **II.**

2                                **Analysis**

3    **A.    Plaintiffs' Claims**

4          Plaintiffs allege Defendant's liability under both federal and Commonwealth law for the

5    conduct described above in Part I.  We address Plaintiffs' federal claims before moving on to

6    their Commonwealth claims.

7          Before discussing the merits, however, we briefly consider Defendant's argument that

8    Plaintiffs' claims are barred by laches.  (See Docket No. 37 at 29–32; 12 at 6–11.)  We note that

9    Plaintiffs claim an exclusive right to use the term "Oriental" in relation to financial services in

10   Puerto Rico, but their submissions to the court indicate their view that the infringing activity

11   began in 2009, with Defendant's deployment of its new logo and advertising campaign.  (See,

12   e.g., Docket No. 25 at 3–4.)  Given that limitation, we find inapposite Defendant's arguments

13   as to Plaintiffs' delay in complaining about Defendant's use of "Oriental," which dates back to

14   1966, or "Coop Oriental," which dates back to 1995.  With this in mind, we turn to the merits

15   of Plaintiffs' claims.

16        **1.    Federal Claims**

17             **a.    Liability**

18        Plaintiffs claim Defendant's civil liability under federal statute for service mark

19   infringement, mark dilution, and cyberpiracy.  (Docket No. 1.)  We address each claim in turn.

20                  **i.    Infringement**

21        Section 1125(a) provides:

Civil No. 10-1444 (JAF)                                                                    -8-

1                  [A]ny person who, on or in connection with any . . . services, . . .

2                  uses in commerce any word, term, name, symbol, or device, or

3                  any combination thereof . . . [that] is likely to cause confusion,

4                  or to cause mistake, or to deceive as to the affiliation,

5                  connection, or association of such person with another person, or

6                  as to the origin, sponsorship, or approval of his or her . . .

7                  services . . . by another person . . . .

8                  . . . .

9                  . . . shall be liable in a civil action by any person who believes

10                 that he or she is or is likely to be damaged by such act.

11    15 U.S.C. § 1125(a).   "Before a party can succeed in an infringement action, it must

12    demonstrate both that its mark merits protection and that the allegedly infringing use is likely

13    to result in consumer confusion." Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d

14    112, 116 (1st Cir. 2006). "[I]n order to be eligible for trademark protection, a mark must qualify

15    as distinctive." Id. (citing Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992)).

16    As to confusion, the court must "determine whether 'the allegedly infringing conduct carries

17    with it a likelihood of confounding an appreciable number of reasonably prudent purchasers

18    exercising ordinary care.'" Shell Co. (P.R.) v. Los Frailes Serv. Station, Inc., 605 F.3d 10, 22

19    (1st Cir. 2010) (quoting Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green

20    Nursing Ctr., 103 F.3d 196, 201 (1st Cir. 1996)).

21          Plaintiffs contend that their service mark is "arbitrary" and, therefore, "inherently

22    distinctive." (Docket Nos. 1 at 5; 3 at 15.)  When a common word is "applied in an unfamiliar

23    way" solely for use as a service mark, its use is deemed "arbitrary." See Abercrombie & Fitch

24    Co. v. Hunting World, Inc., 537 F.2d 4, 11 n.2 (2d Cir. 1976), cited in Two Pesos, 505 U.S. at

25    768. "[A]rbitrary . . . marks are considered inherently distinctive." Borinquen Biscuit, 443 F.3d

26    at 116. Defendant does not dispute the distinctiveness of Plaintiffs' "Oriental" mark but, rather,

Civil No. 10-1444 (JAF)                                                        -9-

1    focuses on the likelihood of confusion between its and Plaintiffs' uses of the word.  Insofar as

2    "Oriental" is a common word applied to Plaintiffs' financial services as a mark, we find that it

3    is an arbitrary mark that merits protection under federal trademark law.

4          In determining whether a likelihood of confusion exists, we consider a nonexhaustive

5    list of factors:  "(1) the similarity of the marks; (2) the similarity of the goods (or, in a service

6    mark case, the services); (3) the relationship between the parties' channels of trade; (4) the

7    juxtaposition of their advertising; (5) the classes of prospective purchasers; (6) the evidence of

8    actual confusion; (7) the defendant's intent in adopting its allegedly infringing mark; and (8) the

9    strength of the plaintiff's mark."  Shell, 605 F.3d at 21 n.9.  "The application of those factors

10   to the record is a highly fact-intensive inquiry."  Id. at 22.

11         Plaintiffs presented evidence of actual consumer confusion, which began in 2010.  We

12   find that this confusion coincided with Defendant's rebranding efforts, which feature the color

13   orange and more prominent placement of the word "Oriental."  We also note that Plaintiffs and

14   Defendant offer many of the same services to some of the same geographical regions in Puerto

15   Rico.  Plaintiffs and Defendant advertise in the same newspapers, and Defendant does not limit

16   its clientele to a particular income level.  We have no evidence as to Defendant's intent in

17   rebranding its mark, but the absence of a benign explanation for choosing a mark and dress

18   similar to Plaintiffs' leaves us free to infer, as we do, that Defendant knew of and intended to

19   benefit from Plaintiffs' considerable advertising efforts.  In addition, Defendant concedes, and

20   we agree, that Plaintiffs' mark is strong in Puerto Rico.  (See Docket No. 12 at 22.)

1    Given this combination of factors, we find that Defendant's mark and dress from the time

2    of its 2009 overhaul constitute infringement under § 1125(a).  In particular, we find that

3    Defendant's selection of the color orange and more prominent placement of the word "Oriental"

4    confuses consumers regarding Defendant's identity in relation to Plaintiffs'.  We do not,

5    however, find that Defendant's use of "Oriental" in all instances constitutes infringement, nor

6    do we find its use of "Coop Oriental" per se infringing.

7                                    **ii.    Dilution**

8    Section 1125(c) provides that the owner of a "famous" mark can bring a claim for

9    dilution.  § 1125(c)(1), (5).  It clarifies that "a mark is famous if it is widely recognized by the

10   general consuming public of the United States."  § 1125(c)(2)(A); see I.P. Lund Trading ApS

11   v. Kohler Co., 163 F.3d 27 (1st Cir. 1998) ("[N]ational renown is an important factor in

12   determining whether a mark qualifies as famous under [§ 1125(c)]."); TCPIP Holding Co. v.

13   Haar Commc'ns, Inc., 244 F.3d 88, 99 (2d Cir. 2001) ("[E]xamples of eligible 'famous marks'

14   . . . are marks that for the major part of the century have been household words throughout the

15   United States."); see also Enterprise Rent-A-Car Co. v. Advantage Rent-A-Car, Inc., 330 F.3d

16   1333, 1340 (Fed. Ct. App. 2003) (discussing congressional intent behind § 1125(c)).

17   Defendant contends that Plaintiffs' "Oriental" mark is not famous (Docket No. 37 at 11),

18   and in the context of § 1125(c), we agree.  Plaintiffs offered evidence of advertising and

19   services within Puerto Rico only.  This falls short of the national fame contemplated by federal

20   trademark law.  Therefore, Plaintiffs are not entitled to federal protection against any alleged

21   dilution.

1          **iii.     Cyberpiracy**

2          Section 1125(d) provides that the owner of a mark may sue a person who, with "bad faith

3   intent to profit from that mark, . . . uses a domain name that[,] . . . in the case of a mark that is

4   distinctive at the time of registration of the domain name, is identical or confusingly similar to

5   that mark." § 1125(d)(1)(A).  Section 1125(d)(1)(B) lists factors the court should consider in

6   determining whether that person had "bad faith intent."  It also specifies that bad faith intent

7   "shall not be found in any case in which the court determines that the person believed and had

8   reasonable grounds to believe that the use of the domain name was a fair use or otherwise

9   lawful." § 1125(d)(1)(B)(ii).

10         Plaintiffs here have failed to offer sufficient evidence of bad faith intent.  Defendant uses

11  the website to promote and provide its services, and the domain name is its shortened name,

12  which it has used in the marketplace since 1995.  Absent evidence of bad faith intent in

13  registering its domain name, Plaintiffs have failed to demonstrate a violation of § 1125(c).

14         **b.     Relief**

15         Plaintiffs request a permanent injunction, damages, and destruction of infringing

16  property.  (Docket No. 1.)  We address Plaintiffs' entitlement to each, in turn.

17         **i.     Injunction**

18         Section 1116 provides that a court may grant an injunction, "according to the principles

19  of equity," to prevent further service mark infringement, as defined in § 1125(a).

20                 A plaintiff seeking a permanent injunction before a district court
21                 must ordinarily show: "(1) that it has suffered an irreparable
22                 injury; (2) that remedies available at law, such as monetary
23                 damages, are inadequate to compensate for that injury; (3) that,

1             considering the balance of hardships between the plaintiff and
2             defendant, a remedy in equity is warranted; and (4) that the public
3             interest would not be disserved by a permanent injunction."

4   <u>Shell</u>, 605 F.3d at 19 (quoting <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006)).

5         We find that Plaintiffs are suffering an ongoing injury that cannot be repaired or

6   compensated with monetary damages. Specifically, banking customers are confusing Plaintiffs'

7   services with those of Defendant, and Defendant is benefitting, intentionally or not, from

8   Plaintiffs' advertising efforts. An injunction against Defendant will entail considerable costs,

9   including replacing Defendant's logo and color scheme with one that is not confusingly similar

10  to Plaintiffs'. Nevertheless, Defendant risked that expense when it selected its new service

11  mark and dress. Given the evident consumer confusion, we find that an injunction preventing

12  Defendant from using its current mark and dress is necessary to prevent further harm to

13  Plaintiffs and to the consuming public.

14          **ii.**    **Damages**

15        Section 1117 provides that a court may grant damages for a violation of § 1125(a). A

16  prevailing plaintiff may recover (1) the defendant's related profits, subject to upward or

17  downward adjustment by the court; (2) any damages the plaintiff sustained, subject to no greater

18  than a treble increase by the court; and (3) costs of the action, including reasonable attorney's

19  fees.

20        We have seen no evidence of quantifiable damages to Plaintiffs. The controversy is now

21  resolved and no discernible major future damages seem apparent. But, because the parties

1   agreed to rest on the issue of liability alone, we afford Plaintiffs the opportunity to demonstrate

2   damages that can be quantifiable, perhaps in the nature of costs and attorney's fees.

### iii.    **Destruction of Infringing Articles**

4          Section 1118 provides that, given a violation of § 1125(a), a court may order that all

5   infringing items, such as signs and packaging, be delivered up and destroyed. We find Plaintiffs

6   entitled to this relief. Defendant must immediately suspend the use of the infringing articles,

7   but is at liberty to return to the mark and dress it used prior to 2009 or to adopt new ones

8   consistent with this opinion. We grant a thirty-day transition to achieve the results of the

9   ordered injunction.

### 2.    **Puerto Rico Claims**

### a.    **Puerto Rico Trademark Act of 2009**

12         The Puerto Rico Trademark Act of 2009 incorporates elements of federal trademark law,

13  former Commonwealth trademark law, Law 63 of August 14, 1991, and the Model State

14  Trademark Act. See Law 169 of December 16, 2009. Article 26 of the Act is the analogue to

15  15 U.S.C. § 1125(a), and it similarly creates civil liability for infringement of service marks

16  used in Puerto Rico. Article 28 reflects the federal provision on service mark dilution, though

17  "famous" in the context of Article 28 means only islandwide renown. Finally, Article 29

18  protects against cyberpiracy and requires a demonstration of bad faith intent similar to that of

19  15 U.S.C. § 1125(d).

20         For the reasons articulated above, we find that Plaintiffs are entitled to relief under

21  Article 26, to the same extent they are entitled under § 1125(a).

1    Article 28 provides a remedy for the holder of a famous service mark in Puerto Rico, for

2    blurring or tarnishment as to the origin of services provided under that mark.  See Law No. 169,

3    of December 16, 2009.  It protects the holder even if the allegedly violating user attaches the

4    mark to a service different from that of the original service or even if there is no risk of

5    consumer confusion.  Article 28 provides a nonexclusive list of factors to use in determining

6    whether the mark is famous in Puerto Rico: (1) the duration, extension, and geographic reach

7    of the promotion of the mark, and whether the promotion is made by its owner or by third

8    parties; (2) the quantity, volume, and geographic reach of the sale of the services offered under

9    the mark; (3) the extent of the mark's recognition in Puerto Rico; and (4) whether the mark is

10   registered and, if so, in which jurisdictions.

11   Plaintiffs submitted evidence tending to show the famousness of its mark in Puerto Rico.

12   (See, e.g., Hr'g Pls.' Exs. 6; 8.)  Nevertheless, Article 28 describes an offense lesser than that

13   described in Article 26, and it provides for no remedy different from that of Article 26.  We,

14   therefore, decline to consider whether Defendant has diluted Plaintiffs' mark in addition to

15   infringing it under Article 26.

16   As for Article 29, we find that cyberpiracy under Puerto Rico requires bad-faith intent,

17   reflecting cyberpiracy under federal law.  For the same reasons articulated above, see supra

18   Part II.A.1.iii, we find that Plaintiffs have failed to demonstrate bad faith intent and, therefore,

19   cannot obtain relief under Article 29.

Civil No. 10-1444 (JAF)                                                                -15-

1    **b.    Unfair Competition and Deceptive Trade Practices**

2    Plaintiffs allege that a violation of Commonwealth trademark law also constitutes a tort

3    under 31 L.P.R.A. § 5141.  We have already determined that Defendant infringed on Plaintiffs'

4    service mark, as described above, and the trademark statutes described above provide for relief

5    specific to that conduct.  Because Plaintiffs allege no further conduct by Defendant requiring

6    relief, we decline to determine Defendant's liability under the more general tort law.  Cf.

7    Rosario v. Valdes, 2008 WL 509204, at *1–2 (D.P.R. Feb. 21, 2008) (where specific labor law

8    on point, no cause of action under § 5141).

9    **B.    Defendant's Counterclaim**

10   Defendant counterclaims for declaratory judgment under 28 U.S.C. § 2201(a).  (Docket

11   No. 37 at 12–35.)  We find that we have already resolved here every issue on which Defendant

12   seeks declaratory judgment (see id. at 33–34 (Defendant's prayer for judgment)).  We, therefore,

13   grant and deny relief in accordance with the terms stated herein.

14                                              **IV.**

15                                          **Conclusion**

16   For the reasons stated herein, we hereby:

17   **ENJOIN** Defendant from using its new logo—in particular, the prominent placement

18   of the word "Oriental"—and its new color scheme, the combination of which infringes

19   Plaintiffs' service mark under both federal and Puerto Rico law.  Defendant may revert to the

20   mark and dress it used prior to 2009, or may adopt new ones consistent with this injunction.

21   **Within thirty (30) days**, Defendant shall file with the court a report detailing the steps taken

Civil No. 10-1444 (JAF)                                                          -16-

1    to abate this infringement, as contemplated by 15 U.S.C. § 1116(a).  The court expects full and

2    immediate compliance with this injunction and will strictly enforce its terms.

3            **ORDER** the parties to appear for a **Status Conference on November 15, 2010, at**

4    **1:30 P.M.,**  to address the progress of the injunction relief ordered and the entitlement to

5    damages under § 1117 and any equivalent Puerto Rico statute.

6            **DENY AS MOOT** Plaintiffs' motion for preliminary injunction (Docket No. 3).

7            **DENY AS MOOT** Plaintiffs' motion to dismiss Defendant's counterclaim (Docket

8    No. 43).

9            **IT IS SO ORDERED.**

10           San Juan, Puerto Rico, this 20th day of October, 2010.

11                                          s/José Antonio Fusté
12                                          JOSE ANTONIO FUSTE
13                                          Chief U.S. District Judge