UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| ORIENTAL FINANCIAL GROUP, INC.; ORIENTAL FINANCIAL SERVICES CORP.; ORIENTAL BANK & TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>COOPERATIVA DE AHORRO Y CRÉDITO ORIENTAL,<br><br>Defendant. | Civil No. 3:10-cv-1444 (JAF) |

**OPINION AND ORDER**

**I.**

**Introduction**

This trademark infringement matter is before the court on remand from the First Circuit Court of Appeals. *Oriental Financial Group, Inc. v. Cooperativa de Ahorro y Crédito Oriental*, 698 F.3d 9 (1st Cir. 2012). The scope of the remand is limited to two issues: 1) Whether Defendant Cooperativa de Ahorro y Crédito Oriental's ("Defendant" or "Cooperativa") use of the trade name "Coop Oriental" standing alone creates a likelihood of confusion with the word mark "Oriental" used by Plaintiffs Oriental Financial Group, Inc., Oriental Financial Services Corp., and Oriental Bank and Trust (collectively, "Oriental" or "Plaintiffs"); and 2) whether Defendant's use of the terms "Club de Orientalito," "Oriental POP," or any other derivatives of Plaintiffs' protected mark creates a likelihood of confusion that the products are offered by Plaintiffs and not by Defendant.

For the following reasons, the court finds no additional infringement and that Oriental is not entitled to broader injunctive relief than already provided.

## II.

## **Facts and Procedural History**

The facts and procedural history of this case are set forth in *Oriental*, 698 F.3d at 13-14. By way of summary, Plaintiffs, which are financial-services companies doing business in Puerto Rico in the context of commercial banking, brought suit against Defendant, a credit union also doing business in Puerto Rico, for service mark infringement.

Previously, this court found, and the First Circuit Court of Appeals agreed, that Defendant infringed Plaintiffs' service mark "ORIENTAL" and trade dress as to the Defendant's 2009 logo. This court also found that Defendant's use of "Oriental" in all instances does not constitute infringement, and its use of "Coop Oriental" is not per se infringing. As a result of the injunction ordered by the court, Defendant reverted back to using its former "COOP ORIENTAL" mark with different trade dress.

Plaintiffs then moved this court to broaden the injunction to include any use of the term "Oriental" by Defendant. The court denied Plaintiffs' motion. (Docket No. 68.) Apparently believing that this court relied solely on the non-existence of actual confusion with respect to the mark COOP ORIENTAL, the First Circuit remanded the matter for the court "to determine whether there is a likelihood of confusion as to the COOP ORIENTAL mark and other marks and whether the injunction should be broader[.]" *Oriental*, 698 F.3d at 13.

Accordingly, the matter is now before the court to address whether Defendant's use of the mark COOP ORIENTAL, and similar marks, infringes on Plaintiffs' protected mark.

### III.

### Scope of Remand

The court must analyze the matter on remand in conformity with the law of the case. "The law of the case doctrine is a prudential principle rooted in important policy interests like 'stability in the decisionmaking process, predictability of results, proper working relationships between trial and appellate courts, and judicial economy.'" *United States v. Davila-Felix*, 763 F.3d 105, 108-09 (1st Cir. 2014) (*quoting United States v. Bell*, 988 F.2d 247, 250 (1st Cir. 1993)). The doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Id.* at 109 (*citing United States v. Wallace*, 573 F.3d 82, 87-88 (1st Cir. 2009)).

Furthermore, the parties cannot re-litigate matters that were "explicitly or implicitly decided by an earlier appellate decision in the same case." *Id. (citing United States v. Moran*, 393 F.3d 1, 7 (1st Cir. 2004)). On remand, a trial court is required to conform to the directions of the appellate court. *Id.* (citation omitted). A district court must consider "both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Id.* (citation omitted).

The First Circuit upheld this court's finding that the matter only involves alleged infringement "beginning in 2009 (when Cooperativa combined use of the COOP

ORIENTAL mark with a new orange trade dress similar to that used in Oriental's logo).'" *Oriental*, 698 F.3d at 16. The Circuit, however, determined that this court had not reviewed whether the words "Coop Oriental," standing alone, infringed on Plaintiffs' mark. Accordingly, "the key issue [for this court on remand] is whether the use of COOP ORIENTAL standing alone would create a likelihood of confusion." *Id.* at 17. Additionally, the Circuit remanded this matter in order for this court to determine whether Defendant's use of the terms "Club de Orientalito," "Oriental POP," or any other derivatives infringes on Plaintiffs' protected mark.

### IV.

### **Law and Analysis**

The First Circuit has set forth eight factors for a district court to use when assessing the likelihood of confusion: "(1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark." *Oriental,* 698 F.3d at 17 (quoting *Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp.*, 376 F.3d 8, 15 (1st Cir. 2004)). "The application of [the eight] factors to the record is a highly fact-intensive inquiry." *Id.* (quoting *The Shell Co. (P.R.) Ltd. v. Los Frailes Serv. Station, Inc.*, 605 F.3d 10, 22 (1st Cir. 2010). No single factor is dispositive. *Id.* (citations omitted). "[The eight] factors are not to be applied mechanically. Courts may consider other factors and may accord little weight to factors

that are not helpful on the particular facts of a case." *Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8, 15 (1st Cir. 2004) (citation omitted).

As the First Circuit correctly noted, this court's previous evaluation of the second, third, fourth, fifth, and eighth factors was not specific to the 2009 logo and apply to the instant inquiry as well.[1] Accordingly, the court now reviews the first, six, and seventh factors[2] as applied to Defendant's mark "Coop Oriental" (and "Cooperativa"), standing alone.

**A.     The Similarity of the Marks**

The first factor, the similarity of the marks, weighs in favor of Defendant. Typically, "[s]imilarity is determined on the basis of the total effect of the designation, rather than a comparison of the individual features." *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 817 (1st Cir. 1987) (quoting *Pignons*, 657 F.2d at 487). Previously, this court found that the "Oriental" mark is an arbitrary mark meriting protection under federal trademark law. Defendant uses the entirety of Plaintiffs' mark in its mark "Coop Oriental" (and "Cooperativa Oriental"). Although the addition of a descriptive word to an arbitrary mark "is generally not sufficient to avoid confusion"

---

[1] "[M]any of the findings made by the district court are not specific to the orange trade dress contained in the 2009 logo and, thus, are equally relevant in assessing Cooperativa's use of the COOP ORIENTAL mark standing alone. For example, the district court weighed the second (similarity of the goods) and third (relationship between the parties' channels of trade) factors in favor of Oriental, noting that Oriental and Cooperativa 'offer many of the same services to some of the same geographical regions in Puerto Rico.' The district court similarly weighed the fourth (relationship between the parties' advertising) and fifth (classes of prospective purchasers) factors in favor of Oriental, recognizing that Oriental and Cooperativa 'advertise in the same newspapers, and [Cooperativa] does not limit its clientele to a particular income level.' Finally, as to the eighth factor (strength of the plaintiff's mark), the court found (as conceded by Cooperativa) that Oriental's 'mark is strong in Puerto Rico.' These factual findings equally support a finding of likelihood of confusion with respect to the COOP ORIENTAL mark divorced from the 2009 logo." *Oriental*, 698 F.3d at 18 (internal citations omitted).

[2] Although the court will not specifically address five of the factors, it should be noted that the review of the remaining factors may reach the fringes of the factors reviewed previously by the court.

(*Oriental*, 698 F.3d at 18 (citation omitted)), the court finds that the addition of the term "Coop" (or "Cooperativa") in Defendant's mark is an essential and distinct term that sufficiently differentiates "Coop Oriental" from "Oriental." Defendant is a cooperative, a credit union formed under the laws of Puerto Rico; whereas Plaintiffs operate a full-service commercial bank. The term "Coop" (or "Cooperativa") is a common term easily recognizable by the people of Puerto Rico.

Here, the term "Coop" (or "Cooperativa") is an important identifier signifying its designation as a credit union. It is not merely a descriptive word such as in the cases cited by Plaintiffs. (See Docket No. 113 at 15 ("Giant" versus "Giant Hamburger" in *Giant Food, Inc. v. Nation's Foodservice, Inc.* 710 F.2d 1565 (Fed. Cir. 1983); "Capri" versus "Capri Collection" in *G.B.I. Tile and Stone, Inc.*, 2009 WL 3491050 (T.T.A.B. 2009); "Perry's Pizza" versus "Perry's" in *In re Denisi*, 1985 WL 72008 (T.T.A.B 1985); "RICA" versus "Nestle RICAS" in *Borinquen Biscuit Corp. v. M.V. Trading Corp*, 443 F.3d 112 (1st Cir. 2006); "Jenn-Air Attrezzi" versus "Attrezzi" in *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32 (1st Cir. 2006)). Unlike each of the cases cited by Plaintiffs, Defendant's use of the term "Coop" (or "Cooperativa") creates a highly recognizable difference in the type of entity at issue.

Not only is the term "Coop" (or "Cooperativa") a recognizable difference with important meaning in Puerto Rico, it is necessary and mandated by statute. Title 7, Section 1363a, of the Laws of Puerto Rico require that the name of any cooperative include "'Savings and Credit Cooperative' or the initials 'Coop' or 'SCC'." This term

Case 3:10-cv-01444-ADC   Document 145   Filed 11/12/14   Page 7 of 13
Civil No. 3:10-cv-1444 (JAF)                                                                                               -7-

distinguishes Cooperativa from Oriental since Oriental, as a for-profit corporation, may not use the term in its name.

The First Circuit stated that "the first factor *could* weigh in favor of Oriental." *Oriental*, 698 F.3d at 18 (emphasis added). The appellate court also recognized, however, that the district court must have the first opportunity to analyze the evidence and determine whether Defendant's use of "Coop Oriental" (or "Cooperativa Oriental") infringes on Plaintiffs' protected mark by evaluating the likelihood of confusion of the marks. This court finds that Defendant's use of the trade name "Coop Oriental" (as well as "Cooperativa Oriental"), given the importance and significance of the term "Coop," is sufficient to avoid confusion with Plaintiffs' mark "Oriental," used in the context of a full-service commercial bank. Accordingly, the first factor weighs in favor of Defendant.

**B.    Evidence of Actual Confusion**

The sixth factor weighs strongly in favor of Defendant. The evidence before the court demonstrated a confusion between the Defendant's 2009 trade dress and the Plaintiffs' trade dress because of their shared color schemes and word placement emphasis. Plaintiffs presented no evidence of actual confusion prior to the Defendant's introduction of the 2009 trade dress despite Defendant's use of "Coop Oriental" for nearly fifteen years.

Stating that the evidence presented by Plaintiffs could arguably indicate "actual confusion [ ] to the use of the COOP ORIENTAL mark standing alone," the First Circuit Court of Appeals pointed to a handful of instances where customers were confused post-2009:

> A supervisor at one of Oriental's branches testified that several customers had attempted to cash checks bearing the name COOPERATIVA ORIENTAL at the Oriental branch, apparently associating that name with Oriental's business. The supervisor also testified that customers with Cooperativa accounts had attempted to withdraw or deposit money at the Oriental branch. A customer relations officer at a different Oriental branch also testified that customers had called an Oriental branch attempting to verify their accounts, which were actually held by Cooperativa. These customers, according to the employee's testimony, relied on the similarity of Oriental's marks and the COOP ORIENTAL mark in assuming that Cooperativa was a subsidiary of Oriental. Oriental also presented several other examples of actual consumer confusion, including telephone calls by Cooperativa customers to Oriental branches and inquiries by Oriental customers about branches that actually were a part of Cooperativa.

*Oriental*, 698 F.3d at 19. This court has appropriately considered the instances of actual confusion. It is uncontroverted that no evidence of actual confusion exists prior to the Defendant's use of the 2009 trade dress. Upon further review of the testimony presented, the court is convinced that absent the infringing use of the 2009 trade dress, the instances of actual confusion post-2009 would likely not have occurred.

Moreover, actual confusion is not likely to occur in the future. *See e.g. Fisons Horticulture, Inc. v. Vigoro Industries, Inc.*, 30 F.3d 466, 476 ("When parties have used similar marks for a sufficient period of time without evidence of consumer confusion about the source of the products, there is an inference that future consumers will not be confused either.") Although actual confusion is not necessary, the absence of confusion is highly probative. *Aktiebolaget Electrolux v. Armatron Int'l, Inc.*, 999 F.2d 1, 4 (1st Cir. 1993). The fact that Defendant operated without confusion under the name "Coop

Oriental" for over ten years while Plaintiffs used the service mark "Oriental" also weighs in favor of Defendant. Although not dispositive, the absence of actual confusion is of considerable relevance given the history of these particular parties; the court considers it accordingly.

**C.     The Defendant's Intent in Adopting its Mark**

The seventh factor weighs in favor of Defendant when applying it to the mark "Coop Oriental" standing alone. This court previously found, based on the similarity of Defendant's trade dress, that it "knew of and intended to benefit from [Oriental's] considerable advertising efforts." The same inference cannot be drawn based upon Defendant's use of the "Coop Oriental" mark standing alone.

The term "oriental" is a geographic locator of the area where both Plaintiffs and Defendant commenced their respective businesses. The use of the adjective "oriental" means "eastern" in English (just as the term occidental is another word for western) and designates that a company was likely formed on or highly associated with the eastern part of the island.

The record demonstrates that Defendant has been doing business in Humacao, Puerto Rico, using the geographical indicator "Oriental" since 1966 and began using the "Coop Oriental" word mark in 1995. In 1964, Oriental Bank was founded in Humacao, Puerto Rico. Humacao is located on the eastern coast of Puerto Rico. A brief perusal of the Humacao business phone directory reveals numerous uses of the adjective oriental: *i.e.,* Oriental Maintenance, Oriental Realty, Oriental Taxi, Corporación Médica Oriental, and Oriental Medical Group, to name a few. Based on the evidence presented during the

bench trial, and the history of these parties, as well as the Puerto Rican consumer market, the court does not believe that Defendant engaged in bad faith when it chose to use the trade names "Coop Oriental" and "Cooperativa Oriental." Accordingly, the court finds that the seventh factor also weighs in favor of Defendant.

**D.      No Likelihood of Confusion**

Determining the likelihood of confusion is a factually-intense inquiry. *Borinquen Biscuit Corp.*, 443 F.3d at 120. When properly analyzing the eight factors, the court must consider all factors, but allow no single factor to be dispositive. *Peoples*, 672 F.3d at 10 (citation omitted). After weighing each of the eight factors, five of which favor Plaintiffs and three of which favor Defendant, the court finds that Plaintiffs have not demonstrated a likelihood of confusion by Defendant's use of the word marks "Coop Oriental" or "Cooperativa Oriental."

**E.      Club de Orientalito and Oriental POP**

As the First Circuit Court of Appeals recognized, Plaintiffs presented little evidence with respect to Defendant's use of the terms "Club de Orientalito" and "Oriental POP." However, the court must now, on remand, determine whether Defendant's use of these terms as product names infringe on Plaintiffs' mark. Upon review of the arguments, evidence, and case law, the court finds that there is no likelihood of confusion of these marks as being associated with Plaintiff Oriental.

The first element, similarity of marks, favors Plaintiffs. The terms "Club de Orientalito" and "Oriental POP," standing alone, could easily be confused as a product of Oriental. The distinction "Coop" or "Cooperativa" is not present in these product names

and the addition of "Club de" and "POP" is not significant enough to differentiate the products from products offered by Plaintiffs.

The sixth element, actual confusion, weighs in favor of Defendant. Plaintiffs presented no evidence of actual confusion regarding the products offered by Defendant. Though evidence of actual confusion is not required, "courts may still weigh evidence presented on this factor as part of their balanced analysis." *Peoples*, 672 F.3d at 10-11. Plaintiffs point to testimony of actual confusion related to letters sent by Defendant in 2010. These letters describe the products offered, including "Cuenta Orientalito" and "Cuenta Oriental Pop." The testimony showed only that once a consumer confused the business entities, that confusion could carry over into confusion of the products that were offered and their origin. As noted above, once the 2009 trade dress was removed via this court's injunction, there no longer remains any likelihood of confusion of the two business entities. As a result, there can be no carry over confusion to the products and their origin.

It is the Plaintiffs' burden to prove likelihood of confusion; and here, Plaintiffs have not met their burden. In fact, there is only a single time during the trial when Plaintiffs mention "Club de Orientalito" and "Oriental POP," and that was during the testimony of its head of advertising. The individual speculated that a consumer could get confused by the Defendant's use of the terms. No independent testimony was presented. No instances of actual confusion were discussed.

Additionally, the court finds that there is not a likelihood that confusion will occur in the future. During the final judgment hearing, Plaintiffs requested the court to review

the Defendant's website advertising its products. Plaintiffs directed the court to the website and then to the products whose names are at issue. The court reviewed the matter and determined that Defendant's use of "Club de Orientalito" and "Oriental POP" did not create a likelihood of confusion as to the source of the services. The court stands by its previous decision.

The evidence and testimony demonstrate that the confusion occurred because of the Defendant's use of the infringing trade dress. Having considered all of the evidence submitted, the court finds that Plaintiffs have not shown actual confusion or a likelihood of future confusion with respect to the Defendant's use of "Club de Orientalito," "Oriental POP," or any other derivatives.

The seventh factor, Defendant's intent in adopting the mark, also weighs in favor of the Defendant. Plaintiffs presented no evidence demonstrating Defendant's intent when choosing the names for these products. For the same reasons stated above, the court does not find bad faith in Defendant's decision to use the names "Club de Orientalito" and "Oriental POP."

After weighing each of the eight factors, six of which favor Plaintiffs and two of which favor Defendant, the court finds that the evidence weighs against a finding that Defendant's use of the term "oriental" in its product names was likely to cause consumer confusion. On the whole, Plaintiffs have not demonstrated a likelihood of confusion by Defendant's use of the product names "Club de Orientalito" or "Oriental POP."

## V.

## **Conclusion**

Be it remembered that, as of today, Defendant's trade dress is vastly different from the Plaintiffs' trade dress. (See http://www.orientalbank.com and www.cooporiental.com.)  In addition, we cannot lose track of the fact that Oriental Bank is a full service commercial bank and a completely different type of financial institution from Cooperativa de Ahorro y Crédito Oriental.  For those of us who live in this District, the one is not the same as the other under any logical stretch of the imagination.

After considering each of the eight factors,[3] the court finds that there is no basis to broaden the injunctive relief. Accordingly, Plaintiffs' motion to permanently enjoin Defendant from using the word marks "Coop Oriental" and "Cooperativa Oriental," as well as the names "Oriental POP" and "Club de Orientalito," is DENIED.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 12th day of November, 2014.

S/José Antonio Fusté
JOSE ANTONIO FUSTE
U. S. DISTRICT JUDGE

---

[3] As noted, the court has not formally reviewed the five factors that have previously been found to apply to all aspects of this matter.  However, to the extent that the analysis above could be seen to touch on those factors, the court notes that its ultimate conclusion of each of those five factors has remained consistent throughout this litigation.