## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**ORIENTAL FINANCIAL GROUP, INC., et al.,**

    **Plaintiffs,**

    **v.**

**COOPERATIVA DE AHORRO Y CRÉDITO ORIENTAL,**

    **Defendant.**

**Civ. No. 10-1444 (ADC)**

### OPINION AND ORDER

Before the Court is plaintiffs' "Motion for amended and additional findings of fact and to amend the judgment or, in the alternative, for a new trial" ("motion to reconsider") and their related motions **ECF No. 233.** Defendant responded with a motion to stay, prompting a flurry of other motions.

Plaintiffs' request to alter/amend/new trial is **DENIED**. **ECF No. 233**. Plaintiffs' motion at **ECF No. 246 is NOTED**; *see* **ECF No. 261**. Motions at **ECF No. 271** and **262** are thus **MOOT**.

## I.   Procedural Background

Plaintiffs Oriental Financial Group, Inc.; Oriental Financial Services Corp.; and Oriental Bank and Trust (collectively, "plaintiffs") are engaged in a long-running dispute with defendant

Cooperativa de Ahorro y Crédito Oriental ("defendant") over plaintiffs' rights as the senior user of the arbitrary mark ORIENTAL.[1]

## A.    Permanent injunction and Judgment

Plaintiffs filed the instant action asserting causes of action for "service mark infringement under the Lanham Act and Puerto Rico law… [plaintiffs] alleged that [defendant]'s COOP ORIENTAL name is confusingly similar to [plaintiffs'] ORIENTAL Marks, and that [defendant]'s COOP ORIENTAL logo … is confusingly similar with the ORIENTAL Marks." *Oriental Fin. Group, Inc. v. Cooperativa de Ahorro y Crédito Oriental*, 698 F.3d 9, 14 (1st Cir. 2012)("*Oriental I*")(Internal quotation marks omitted). Plaintiffs thus moved to permanently enjoin defendant from "directly or indirectly infringing any of [plaintiffs'] rights in the ORIENTAL Marks … by use of: (i) the term ORIENTAL, including stylized depictions thereof; (ii) any composite trademark that includes the term ORIENTAL; or (iii) any composite trademark, including design marks and slogans, that comprises the term ORIENTAL[,]" as well as damages. *Id*.

In 2010, after an evidentiary hearing, the court, by judgment issued by then District Court Judge José A. Fusté, granted plaintiff a "limited" permanent injunction ordering defendant to cease "all use of its new 2009 logo (which used the COOP ORIENTAL mark with an orange trade dress), but allowed [defendant] to revert back to using its pre-2009 logo (also containing

---

[1] For the sake of brevity, the Court defers to its ruling at **ECF No. 230** and *Oriental Fin. Grp., Inc. v. Cooperativa De Ahorro y Crédito Oriental* (*Oriental II*), 832 F.3d 15 (1st Cir. 2016) for a robust recital of the case's procedural history.

the COOP ORIENTAL mark, but with a different trade dress)." In its 2010 Opinion and Order,

however, the Court did not "address the likelihood of confusion posed by the

COOP ORIENTAL mark or other similar marks." *Id.*, at 15. Plaintiffs moved to amend and

expand the injunction to enjoin defendant from using any logo or wordmark other than its full

corporate name. **ECF No. 60** at 4 ("require that defendant's new mark and trade dress [to]

include the full name 'Cooperativa de Ahorro y Crédito Oriental.'").

The Court held a conference on November 18, 2010 whereby defendant "submitted

several proposed new logos for the court's approval." *Id*. While assisted by and in the presence

of the parties, the Court made markings on the Court-approved logos while crossing out the

ones rejected. *Id*.; **ECF No. 61**.[2] Importantly, as recognized by the Court of Appeals, the Court

"approved nearly all of the logos that used only [Defendant]'s full corporate name, 'Cooperativa

De Ahorro y Crédito Oriental.'" *Id*.

After the conference, plaintiffs filed a supplemental memorandum in support of their

motion to amend the injunction. **ECF No. 65**. Plaintiffs' main request and argument were stated

in unequivocal terms: "the only way that [defendant] can avoid stepping into the long shadow

cast by… the ORIENTAL marks… is by using its full name, Cooperativa de Ahorro y Crédito

Oriental." *Id*., at 7. The Court denied plaintiffs' request to enjoin defendant from using all but

---

[2] The minutes of proceedings held on November 15, 2010 reads as follows: "[c]ounsel for plaintiffs informed that they have received some proposals from the defendant regarding new logos. The Court marked in red some logos, and informed that the ones marked should be considered for the final logo (see attached) and that the web site can remain as it is… It appears the parties considered the proposals and the Court's recommendation. Case concluded by the parties' consensus and Judgment entered on March 10, 2011. ECM-ECF No. 61 and 82."

defendant's full corporate name. **ECF No. 68**. The Court then held a hearing to rule upon any

"remaining issue." **ECF No. 74.** On February 17, 2011, the Court indicated: "all pending issues

were resolved. Judgement will be entered." **ECF No. 78**. Judgment was entered on March 10,

2010. **ECF No. 82**.

> B.   *Oriental I* **and the scope of the remand**

In October 2012, the First Circuit vacated in part the Judgment to the "extent that the

district court found that [plaintiffs] did not assert claims of infringement based on [defendant]'s

use of the Coop Oriental and similar marks." *Oriental I* at 24. The case was "remand[ed] to the

district court to determine whether the COOP ORIENTAL mark and similar marks create a

likelihood of confusion, and to fashion an appropriate injunction if a likelihood of confusion is

established." *Id*. However, the Court of Appeals specifically noted that plaintiffs "did not, and

do not, object to [defendant]'s use of its full corporate name." *Id.*, at 16. Elaborating on the scope

of the remand, the Court of Appeals expounded "the district court should also consider whether

the    COOPERATIVA ORIENTAL mark    (and    other    potentially    infringing    usages    of

the ORIENTAL mark) poses a likelihood of confusion." *Id*. at 19. However, it made clear that

"[t]his consideration **does not include** evaluation of [defendant]'s full corporate name,

which **[plaintiffs] concedes is non-infringing**." *Id*., at 20 (emphasis added). **ECF Nos. 104-105**.

> C.    **Proceedings on remand**

On remand, plaintiffs declined to conduct further discovery or participate in another

evidentiary hearing. Thus, the Court was left with no other choice than to look at the record as

built on the previous evidentiary hearing held in 2010. In their briefs on remand, plaintiffs admitted that "[n]either [defendant]'s full corporate name, Cooperativa de Ahorro y Crédito Oriental, nor the logo approved by this Court at a status hearing after the entry of the permanent injunction were issues on appeal." **ECF No. 113** at 4.[3] Plaintiffs added, they "ha[ve] not objected that [defendant] be allowed to continue operating under its full corporate name — Cooperativa de Ahorro y Crédito Oriental — since **it is not confusingly similar**, but requests that it be enjoined from using any name that is confusingly similar to the ORIENTAL marks." *Id.,* at 17 (emphasis added). Ultimately, plaintiffs contended, "other than its full corporate name, [defendant] should be permanently enjoined from using the word marks COOP ORIENTAL and COOPERATIVA ORIENTAL, as well as any other confusingly similar derivatives or variants." *Id.,* at 29.

Since 2010, the Court determined that defendant's trade dress (other than defendant's full name and Court-approved logos) was "vastly different" from plaintiffs'. **ECF No. 145** at 13. In November 2014, the Court found there was "no basis to broaden the injunctive relief" and denied plaintiffs' request to enjoin defendant from using the word marks "Coop Oriental," "Cooperativa Oriental," and the "names" "Oriental POP" and "Club Orientalito." *Id*. Judgment was entered accordingly. **ECF Nos. 145-146.**

---

[3] Thus, admittedly, "Coop de Ahorro y Crédito Oriental" does is non-infringing.

D.     *Oriental II* **and the scope of the remand**

Unsatisfied with the Court's reluctance to expand the injunction to cover "Coop Oriental," "Cooperativa Oriental," and the "names" "Oriental POP" and "Club Orientalito," plaintiffs appealed. Plaintiffs did not raise any concern regarding the use of defendant's full name and Court-approved logos.

The Court of Appeals pointed out that Plaintiffs' federal action sought "injunctive relief against [defendant] to prevent the use of, inter alia, 'any composite trademark that includes the term ORIENTAL.'" *Oriental Fin. Grp., Inc. v. Cooperativa De Ahorro y Crédito Oriental (Oriental II)*, 832 F.3d 15, 21 (1st Cir. 2016). However, the First Circuit made it clear that "[t]his claim did not include [defendant]'s full name, which [plaintiffs] **concede[] is non-infringing**." *Id.* (emphasis added). Leaving Defendant's full name untouched, the Court of Appeals then determined that defendant's "COOP ORIENTAL, COOPERATIVA ORIENTAL, and ORIENTAL POP marks [] infringe on [plaintiffs'] rights in the ORIENTAL mark." *Oriental II* at 37. However, because a party is not automatically entitled to injunctive relief even where there is a finding of trademark infringement, the Court of Appeals for the First Circuit "reversed-in-part and remanded" the case to this District Court to "reassess equitable factors... flowing from the infringement." *Id.* The case was assigned to the undersigned on remand after the Court of Appeals entered judgment. **ECF No. 154**.

### E.   Proceedings following the *Oriental II* remand

On October 6, 2016, plaintiffs filed a memorandum in support of their request for an expanded injunction pursuant to the law of the case set forth by the Court of Appeals in its *Oriental II*'s remand. **ECF No. 157**. Without first securing leave of the Court, plaintiffs filed a reply to defendant's opposition. **ECF Nos. 160, 166.** To persuade the Court that the injunction sought would not "close down [d]efendant's business," plaintiffs clarified the injunction would only "require [defendant] to use… its full corporate name." **ECF No. 157** at 18. Plaintiffs once again emphasized, defendant's full corporate name "**does not cause confusion with [plaintiffs'] marks**." **ECF No. 157** at 18; **ECF No. 166** (emphasis added). Finally, plaintiffs assured the Court that by granting the expanded injunction (*i.e.* requiring defendant to use its full name), plaintiffs will not have to "continuously com[e] back to this Court to enforce its trademark rights against [defendant][,]" **ECF No. 157** at 20, representation that turned out to be as shallow as a lake during drought.

Based on these representations and in accordance with the remand, the Court held a six-day evidentiary hearing to determined whether the injunction should be expanded to cover the infringements outlined by the Court of Appeals (*i.e.* "COOP ORIENTAL, COOPERATIVA ORIENTAL, and ORIENTAL POP marks"). On November 16, 2016, last day of plaintiffs' in-chief case, plaintiffs again insisted "[w]e are requesting that the Cooperativa going forward be required to use its full name." **ECF No. 188** at 49–50. However, based on the testimony and evidence they had presented, plaintiffs raised a challenged to two 2010, Court-approved logos.

Specifically, plaintiffs requested that "the font… the color and the size of the letters be all the same." *Id*., at 50.[4]

Because this new request exceeded the clearly defined scope of *Oriental II*, on November 29, 2016, the Court ordered plaintiffs to show cause why they were "not precluded… from contesting not only the Court-approved logos … as part of a District Court judgment, but then failed to appeal." **ECF No. 174**. The Court reasoned that "[d]laintiffs' representations" and "approval… of the new logos led both the Court of Appeals and [d]efendant to rely on those representations in significant ways, this Court questions whether plaintiffs are estopped from taking an opposite position in the current proceedings." **ECF No. 174** at 5. In addition, the Court asked plaintiffs to consider whether this new challenge was precluded by the law-of-the-case doctrine. Ultimately, the Court remarked, "many obstacles may stand in the way of plaintiffs' ability to contest defendant's use of the Court-approved logo or of any other logo that uses defendant's full corporate name." *Id*., at 7.

Plaintiffs filed a motion in compliance. **ECF No. 181.** Relying on the evidence they submitted during the evidentiary hearing, plaintiffs argued (in hindsight) they had shown several changes in circumstances that,[5] in their view, warranted a modification of the permanent

[4] Back in 2010, however, plaintiffs asserted their willingness to accept the logos which were a composite of marks, comprised of a green-and-brown image of two hands next to defendant's full name in green and black, with COOPERATIVA and ORIENTAL stacked on top of each other in large font and DE AHORRO Y CRÉDITO placed in between them in small font. *See* **ECF No. 61**. Moreover, it is worth mentioning that plaintiffs did not oppose, object to, or otherwise respond to defendant's adoption of the logos.

[5] Notably, plaintiffs contend the testimony offered during the evidentiary hearing was sufficient to support their new claim for expansion of the injunction to encompass defendant's full corporate name as well as all logos that include "Oriental" that they had previously agreed to.

injunction beyond the scope of the remand. However, not only did they moved against the use of the Court-approved logos, but they also moved the Court to enjoin defendant from using any iteration of the "ORIENTAL" mark, which basically means to stop doing business altogether under their full corporate name. *See* **ECF No. 182**. Thus, for the first time,[6] plaintiffs moved to have the Court enjoin defendant from using its full corporate name altogether. *Id*. Defendant opposed. **ECF Nos. 197, 213**. Plaintiffs replied. **ECF Nos. 202, 203**.

Baffled by plaintiffs' questionable gamesmanship, the Court took it upon itself to revise yet again all the evidence, testimonies, and documents available. The Court entered an Order "(i) den[ying] plaintiffs' Rule 60(b)(5) motion, **ECF No. 182**; and (ii) [granting in part and denying in part] plaintiffs' motion for expanded injunctive relief." **ECF No. 226**. "The Court's Opinion will follow." *Id*. Plaintiffs filed a notice of appeal. **ECF No. 227; USCA Case No. 18-2111**. The Court then entered its Opinion and Order. **ECF No. 230**.

F.      The Opinion and Order at ECF No. 230

In its Opinion and Order, the Court explained the *ratio decidendi* behind its decision to grant in part plaintiffs' request for expanded injunctive relief. **ECF No. 230** at 40-41. Specifically, as requested by plaintiffs, the Court modified "its earlier injunction, **ECF No. 54**, by expanding it to cover [d]efendant's use of its COOPERATIVA ORIENTAL, COOP ORIENTAL, and ORIENTAL POP marks," enjoining "[d]efendant from using, in commerce, the marks

---

[6] The Court notes that this argument contradicts plaintiffs' position from 2010 through 2016, and the position argued by plaintiffs during the entirety of the evidentiary hearing.

COOPERATIVA ORIENTAL, COOP ORIENTAL, and ORIENTAL POP in connection with any of its goods and services." **ECF No. 230** at 41. The Court permitted Defendant to "continue to use the Court-approved logos" identified at **ECF No. 61** with an important caveat, to "respect the relative font sizes and proportions set forth in those logos, especially with regard to the size of the words 'de Ahorro y Crédito' vis-à-vis the size of the words 'Cooperativa' and 'Oriental.'" **ECF No. 230** at 41.

In its Opinion and Order, however, the Court denied plaintiffs' request to enjoin defendant altogether from using any iteration of the ORIENTAL mark, the logos approved by the Court in 2010, and defendant's full corporate name. Based on the record and the evidence submitted during the evidentiary hearing, the Court determined "that, for purposes of this second remand, plaintiffs may not take back their concession (which they even accepted before the Appeals Court), that defendant may advertise itself under its full corporate name without infringing their trade and service marks." **ECF No. 230** at 39-40. Based on the portion of testimony deemed credible, the Court questioned plaintiffs' timing in bringing their new request and the strength of their argument for expanded relief beyond the scope of the remand. *Id.* at 39.

The Court further found that "[p]laintiffs' reliance on the speculation of one of their witnesses [was] particularly ill-placed," and rejected plaintiffs' claim that they "became aware" of the need for this broader relief "[w]hile preparing for the evidentiary hearing" and upon eliciting the testimony of their witness during the hearing. **ECF Nos. 182** at 2; **230** at 38-39. The

Court also rejected plaintiffs' implication that "whenever a party uses a single infringing mark, every other mark the party uses must also be infringing when there is proof of actual confusion." **ECF No. 230** at 39.

The Court recognized "that plaintiffs may move the Court to modify the injunction when 'applying it prospectively is no longer equitable,'" and when "facts show that such extraordinary relief is warranted." *Id*. at 40. However, referencing its earlier Order to Show Cause in which the Court addressed "the many obstacles" to such relief (*inter alia*, that defendant's use of its full corporate name was not problematic) the Court determined that plaintiffs' all-encompassing request was not warranted. **ECF Nos. 230** at 40, **174**; **157** at 20; **150** at 6; **103** at 19.

### G.      Pending motions before the Court

Plaintiffs now move to alter/amend the Court's findings and ruling or, alternatively, for a new trial pursuant to Federal Rules of Civil Procedure 52(b) and 59(a), (e). **ECF No. 233**. Plaintiffs challenge the Court as having applied the wrong legal standard in its ruling, resulting in the Court's "erroneous" denial of their broader request to enjoin defendant from using its full corporate name. *Id.,* at 3. In support thereof, plaintiffs propose amended findings. Alternatively, plaintiffs request they be permitted to supplement the record with evidence of consumer confusion that it has accumulated since the 2016 evidentiary hearing. However, they still incorporate by reference their previous filings at **ECF Nos. 157**, **182**. Finally, plaintiffs request the Court find defendant in contempt. **ECF Nos. 233** at 25; **246**.

Defendant, on the other hand, moves to stay enforcement of the Court's modified injunction pending its appeal of the November 2020 Opinion and Order. **ECF No. 240**. Defendant also opposes plaintiffs' motion for reconsideration, arguing that plaintiffs' request exceeds the scope of the Appellate Court's mandate and is otherwise untimely. According to defendant, despite plaintiffs' styling of their motion as arising from the November 2020 Opinion and Order, they are truly seeking relief from the Court's September 28, 2018, Order. **ECF Nos. 226**, **247** at 4-5. Thereby, indirectly, also requesting relief of the 2010 Opinion and Order.

## II.   Legal Standard

Federal Rules of Civil Procedure 52(b) and 59(e) are closely related and offer litigants similar relief. *See Nat'l Metal Finishing Co., Inc. v. Barclays American/Comm., Inc.*, 899 F.2d 119, 122 (1st Cir. 1990). Rule 52(b) states, "On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly." The Rule's "purpose is to permit the correction of any manifest errors of law or fact that are discovered, upon reconsideration, by the trial court." *Nat'l Metal*, 899 F.2d at 123. A court is not shackled to a judgment it determines to be based on error upon Rule 52(b) review. *Id*.

Under Rule 59(e), a party may request a district court modify or amend an allegedly incorrect judgment within 28 days of entry of that judgment. Fed. R. Civ. P. 59(e). "To obtain relief, the movant must demonstrate either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law."

*Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006). "The Rule gives a district court the chance 'to rectify its own mistakes in the period immediately following' its decision.'" *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (quoting *White v. New Hampshire Dept. of Employment Sec.*, 455 U.S. 445, 450 (1982)). "[O]nce the ball has ended, the district court has substantial discretion in deciding whether to strike up the band again in order to allow the losing party to argue new material or a new theory." *Appeal of Sun Pipe Line Co.*, 831 F.2d 22, 25 (1st Cir. 1987). However, "courts will not address new arguments or evidence that the moving party could have raised before the decision issued." *Banister*, 140 S. Ct. at 1703 & n.2. "The granting of a motion for reconsideration is an extraordinary remedy which should be used sparingly." *Palmer*, 465 F.3d at 30 (citation and internal quotation marks omitted).

Under Rule 59(a), a "court may, on motion, grant a new trial on all or some of the issues— and to any party." Some jurisdictions consider this rule "broad enough to include a rehearing of any matter decided by the court without a jury." 11 Fed. Prac. & Proc. Civ. § 2804 (3d ed.). Assuming such a remedy is available here, where Plaintiffs are not challenging a trial result, "a district court may order a new trial under Federal Rule of Civil Procedure 59(a) only if the verdict is against the law, against the weight of the credible evidence, or tantamount to a miscarriage of justice." *See Crowe v. Marchand*, 506 F.3d 13, 19 (1st Cir. 2007) (citation and internal quotation marks omitted).

### III.    Analysis

####    A.    Timeliness of Plaintiffs' Post-Judgment Motion

Though the Court informed the parties of its disposition on plaintiffs' pending motions in an order dated September 28, 2018, it specifically reserved entry of findings and opinion for a later date. **ECF No. 226**. Thus, it was not until entry of the Opinion and Order that the parties learned the specific grounds for the Court's September 28, 2018, order and could thereby assess whether to seek post-judgment relief. Plaintiffs "would have been placing the cart before the horse" by filing a post-judgment motion to reconsider findings and "amend a judgment that had not yet been entered." *See* **ECF No. 253** at 5-6.

####    B.    Defendant's Motion to Stay

Defendant requests the Court stay implementation of its November 2020 Opinion and Order pending its appeal of that ruling. According to defendant, "the equities strongly support staying the modification of the injunction." **ECF No. 240** at 14.[7]

Federal Rule of Civil Procedure 62(d) permits a Court to stay an injunction during the pendency of the applicant's appeal of the injunction. "Stays of injunctive orders … are evaluated under the traditional four-part standard applied to injunctions." *Acevedo-García v. Vera-Monroig*, 296 F.3d 13, 16 (1st Cir. 2002). "The considerations are: (1) whether the applicant has made a strong showing of success on the merits; (2) whether the applicant will be irreparably harmed

---

[7] Plaintiffs counter that defendant's motion to stay should be stricken for timeliness. **ECF No. 246** at 2. Because the Court denies the motion to stay on the merits, it need not address Plaintiffs' assertion of untimeliness.

absent injunctive relief; (3) whether issuance of the stay will injure other parties; and (4) where the public interest lies." *Id.* at n.3 (citing *Hilton v. Braunskill*, 481 U.S. 770, 776–77 (1987)). The crux of the analysis "is whether the [movants] are likely to succeed on the merits." *Id.* at 16 (citation and internal quotation marks omitted) (alteration in original).

Defendant argues the first showing is satisfied "given the lack of any evidence [of customer] confusion involving the marks COOPERATIVA ORIENTAL and COOP ORIENTAL [and] the evidence of continued and exponential growth of [Plaintiffs' business] from 2009 to date" despite defendant's use of those marks throughout this period. **ECF No. 240** at 9-10, 14. And, defendant asserts it already minimally uses the marks at issue "except where the court approved logos or full corporate name are unfeasible." *Id.* at 14. For the second, third, and fourth factors, defendant explains that the injunction will have a "disastrous" impact on its marketing efforts and "ability to compete with other credit unions" and will undermine its sponsorships of "struggling local sports teams." *Id.* at 8-9, 14.

The Court is not convinced a stay is merited. Defendant has not made a strong showing of success on appeal. Indeed, the Appellate Court has already held that defendant's COOPERATIVA ORIENTAL and COOP ORIENTAL marks are infringing. Likewise, defendant asserts it currently minimally uses these infringing marks "except where the court approved logos or full corporate name are unfeasible." *Id.* at 14. In other words, there are "minimal" changes necessary to attain defendant's full compliance. Defendant instead focuses on the fact that the changes required will be costly and inconvenient.

Defendant predicts these negative consequences will reverberate into the community because the cost of its compliance will undercut its sponsorship budget, effectively taking cash out of the hands of "struggling local sports teams." *Id*. at 11, 14. Defendant forecasts this will also tarnish its reputation in the community. *Id.* 8, 11. Although the Court sympathizes with some of the potential negative impact the order may have, the Court is unmoved. Defendant risked lost profits and fallout when it adopted marks confusingly similar to plaintiffs' marks. "Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration." *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988) (citation and internal quotation marks omitted).

Last, the Court finds the public interest lies firmly in affording plaintiffs' injunctive relief from defendant's infringing acts as described at **ECF No. 230**. To permit further delay of such relief is to undermine the very purpose of this equitable protection. *See id.* ("It would be incongruous to hold that the more an enterprise relies on copyright infringement for survival, the more likely it will be able to defeat the copyright owner's efforts to have that activity immediately halted.").[8] Accordingly, defendant's motion for stay at **ECF No. 240** is **DENIED**.

---

[8] Moreover, defendant's request to stay has implicitly been foreclosed by the Court of Appeals. The Appeals Court stayed defendant's case on appeal, citing Fed. R. App. P. 4(a)(4)(B)(i), which requires a district court dispose of post-judgment motions before a notice of appeal may become effective. **ECF No. 241**. *See Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (noting that when a party timely submits a Rule 59(e) motion, "there is no longer a final judgment to appeal from"). In other words, defendant's request to stay during the pendency of its appeal may not stand where the notice of appeal is not yet effective.

### C.      Plaintiffs' motions under Rules 52 and 59

Plaintiffs request the Court amend or alter certain findings in the November 2020 Opinion and Order on the basis that those findings are either inaccurate, unclear, or incomplete. **ECF No. 233** at 3, 5-21. Once those material findings are adjusted, plaintiffs contend, the only reasonable outcome is for the Court to amend its judgment to enjoin defendant "from using any mark that features Oriental's ORIENTAL mark, including but not limited to the [Court's previously-approved] logo and its full name." *Id.* at 3.

Defendant counters that plaintiffs have "failed to establish that the Court's findings of fact or conclusions of law are not supported by evidence in the record" or that the findings plaintiffs challenge and propose "are material to the case before the Court." **ECF No. 247** at 7. According to defendant, plaintiffs seek to supplant the Court's "*summary*" of the evidence and testimonies with a version of the facts they prefer in an effort to override the Court's credibility determinations. *Id.* at 7-8 (emphasis in original). The Court agrees.

First of all, plaintiffs' filings fail to consider that the Opinion and Order's findings of fact, which are by no means cursory, were based on this Court's discretion and determinations of credibility. In this case, discretion and the assessment of credibility by the Court is not irrelevant. Conversely, "[t]he decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391 (2006). Thus, plaintiffs' arguments are unconvincing from the get-go since they failed to take into account the Court's discretion.

In any case, the Court made it abundantly clear in its Opinion and Order at **ECF No. 230** that it did not find credible the **relevant** aspects of the testimonies offered by plaintiffs' witnesses. The undersigned sat throughout the entire evidentiary hearing, heard, and saw face to face one by one all the witnesses that took the stand. All findings in the Opinion and Order at **ECF No. 230** are based on the Court's assessment of credibility and discretion. Moreover, the Court carefully explained that even the segments of the testimonies that could arguably stand to the credibility bar, were not **material** and certainly not enough when evaluated in the applicable context.

*Inter alia*, the Court found Brenda Delgado Colón's testimony "incredible," **ECF No. 230** at n.14. It also determined that "[o]ften, plaintiffs' counsel did not elicit sufficient facts or details for the Court to find credible a witness's claim," *Id*., at 23, "Ely Figueroa-Rodríguez… credibly testified to only one instance of customer confusion," *Id*., at 24, while "Elizabeth Ortiz-Vázquez… credibly testified to only two instances of such confusion," *Id*., "Nancy Santiago-Velázquez, an Oriental Bank employee for twenty-three years, could credibly recall only two instances of customers confusing." *Id*. Both innocuous. Moreover, "Verónica Álvarez-Ortiz, credibly testified to only a handful of potential customer confusions… three to five cases in a four-year span," *Id*., at 25. "Norma Galarza-Rivera… credibly testified to only two instances of potential client confusion," "Zeidy Escandón-Velázquez… credibly testified to only one instance of such confusion," "Yalessa Arce-Rivera, an Oriental Bank employee since 2012, also credibly testified to only one such instance." *Id*. "Yesenia Bonilla-Ortíz… credibly testified to, at most,

three instances of customer confusion… Melissa Zayas-Moreno… credibly testified to sporadic occurrences of "apparent" customer confusion." *Id*.

Plaintiffs offer no ground whatsoever to challenge this Court's credibility assessment. Instead, plaintiffs submit several proffered findings, as if they were the rightful factfinders with the last word in this case. In any event, the proposed findings are rejected in light of the record in its entirety.

As to the first proposed finding,[9] the Court declines to exercise its discretion to elaborate on this finding as no such amendment is necessary based on the record. **ECF No. 233** at 5-6. The same goes for the second proposed finding.[10] In addition, as explained in the November 2020 Opinion and Order, the Court interpreted the incident Gilberto Medina testified to as "potential customer confusion" attributable not to "a confusion of signage or marks but rather a

---

[9] "First Amendment Request: ORIGINAL: Over the past seven years, the bank has budgeted approximately $6.1 million per year for advertising, but its advertising budget has decreased in recent years and, in 2016, was only $5.1 million… PROPOSED: Between 2010 and 2017, the bank has invested a total of $42.89 million or approximately $6.1 million per year in advertising, which represents an increase when compared to the $40 million invested in the ten years preceding the 2010 hearing." **ECF No. 233** at 5.

[10] "Second Amendment Request: ORIGINAL: The only other time Medina met someone who appeared to confuse his bank with defendant's credit union was in or around 2014, when a client wanted to open an account with the bank, so that his paycheck could be directly deposited there. The customer thought that his employer also had an account with the bank, but it turned out that the employer had an account, instead, with the credit union. [] Medina had no idea why the customer thought that his employer had an account with Oriental Bank… PROPOSED: The only other time Medina met someone who appeared to confuse his bank with defendant's credit union was in or around 2014, when a client wanted to open an account with the bank, so that his paycheck could be directly deposited there. The customer thought that his employer also had an account with the bank, but it turned out that the employer had an account, instead, with the credit union. [] Upon being told that his employer was not one of Oriental Bank's customers, the client informed Medina that his employer has a direct deposit account with Cooperativa Oriental, and the instructions given to him were to go to Cooperativa Oriental to open his direct deposit account. [] Medina-Cardona believes that the client was confused as to the difference between the credit union and the bank." **ECF No. 233** at 6.

misperception or lack of information as to where [the client's] employer had its bank account."

**ECF Nos. 233** at 6-7; **230** at 8 n.6, 24.

The Court also rejects plaintiffs third proposed finding.[11] Plaintiffs have mischaracterized the hypothetical proposed in the challenged footnote as a finding of fact. Moreover, the Court will not reverse-engineer its determination that the witness' testimony was confusing, unclear, and not credible. Subsequently submitted evidence of local news pieces describing the island's banking industry do not alter the Court's credibility evaluation of this witness as well as the witness' demeanor, recollection, and vagueness of the questions asked and the answer provided by the witness. **ECF Nos. 233** at 7; **230** at 10 n.8.  Notably, as explained before, the Court made a clear finding in its Opinion and Order at **ECF No. 230** stating that "[o]ften, plaintiffs' counsel did not elicit sufficient facts or details for the Court to find credible a witness's claim." *Id*., at 23.

Plaintiffs' fourth proposal is primarily a matter of word choice.[12] And, as explained in the Opinion and Order at ECF No. 230, the Court regards the testimony not credible and

---

[11] "Third Amendment Request: ORIGINAL: Álvarez also mentioned that, a month or two before her testimony, she had a client who had approached her, concerned about the financial health of Oriental Bank and her investments, in light of Puerto Rico's municipal-bond crisis. Id. at 146. Álvarez noted, without elaboration, that the client "believed that we had a relationship with the Cooperativa." Id. Reportedly, upon being asked about Oriental's financial health, Alvarez explained to the customer that Oriental was federally insured.8 [] PROPOSED: Álvarez also mentioned that, a month or two before her testimony, she had a client who had approached her, concerned about the financial health of Oriental Bank and her investments, in light of Puerto Rico's municipal-bond crisis. [] Álvarez noted, without elaboration, that the client believed that we had a relationship with the Cooperativa. [] Reportedly, upon being asked about Oriental's financial health, Alvarez explained to the customer that Oriental was federally insured. Newspaper articles of which publication the Court took judicial notice [] reported between July 2015 and June 2016 that credit unions had invested hundreds of millions of dollars in Puerto Rico Bonds and were at the risk of experiencing millions of dollars in losses as a result of Puerto Rico's bond market fiscal crisis." **ECF No. 233** at 7.
[12] "Fourth Amendment Request: ORIGINAL: For example, a coworker once told her that a customer had come to the bank with inquiries regarding a document showing that defendant's credit union had preapproved him for a

unpersuasive, based on the in-court assessment and in light of the totality of the evidence. **ECF Nos. 233** at 7-8; **230** at 6 n.5, 13 n.12, 23.

Plaintiffs fifth proposition would have the Court disregard its discretion and simply copy the portions of the testimony plaintiffs see fit to their needs.[13] Regardless of plaintiffs' grandiose attitude and unsupported request, the Court need not copy and paste the witness's entire testimony in its summary of the evidence to render its findings supported by the record. **ECF Nos. 233** at 8-9; **230** at 13-14. Plaintiffs' sixth proposal fares no better.[14] The finding entered by the Court reflects the inference plaintiffs seek and this Court's credibility assessment. **ECF Nos. 233** at 9; **230** at 16.

Likewise, plaintiffs' seventh proposal demands that the Court bury all notions of discretion and simply copy the testimony and draw all inferences plaintiffs deem proper.[15]

---

loan. [] PROPOSED: For example, a coworker once told her that a customer came to the bank and handed over a document of a pre-approved loan which, upon closer inspection, was discovered to be from Cooperativa de Ahorro y Crédito Oriental and not Oriental Bank." **ECF No. 233** at 7.

[13] "Fifth Amendment Request: ORIGINAL: Arce also acknowledged that other banks had sponsored the basketball league but denied any knowledge as to whether Oriental Bank sponsored the National Basketball games from 2012 to 2014. [] PROPOSED: Arce also acknowledged that other banks had sponsored the basketball league but denied any knowledge as to whether Oriental Bank sponsored the National Basketball games from 2012 to 2014, although she asserted that tickets to those games had never been sold at her station during the four years she has served as a teller. [] Rivera testified having heard similar stories from other coworkers, at least one who was named, about clients approaching Oriental Bank tellers in order to purchase tickets to the National Basketball games." **ECF No. 233** at 8.

[14] "Sixth Amendment Request: ORIGINAL: When these people are told that they have to go to the credit union to cash their checks because the bank is not affiliated with the credit union, [t]hey get upset because they think [the bank doesn't] want to provide them [with] service. [] PROPOSED: When these people are told that they have to go to the credit union to cash their checks because the bank is not affiliated with the credit union, [t]hey get upset because they think [the bank doesn't] want to provide them [with] service because they say 'hey, the check says Oriental' but then we point out to them that we are not part of the Cooperativa." **ECF No. 233** at 9.

[15] "Seventh Amendment Request: ORIGINAL: According to her, ever since the Las Catalinas branch opened in December 2008, three to four people each week ask her whether Cooperativa de Ahorro y Crédito Oriental is a subsidiary or part of Oriental Bank. [] PROPOSED: According to her, ever since the Las Catalinas branch opened in

Contrary to plaintiffs' position, the Court explained in the November 2020 Opinion and Order why it did not credit witness Delgado-Colón's testimony (for example, Delgado-Colón explained that she personally, had never encountered anyone at the Branch, who had confused the Bank with the credit union). Thereby rendering the addition plaintiffs seek unwarranted. **ECF Nos. 233** at 9-10; **230** at 16-18, n.14, n.15, 23 n.17, 26-27. Plaintiffs' eighth proposal also fails to consider that the Court has a say in what it deems credible or reliable.[16] The Court need not accept as true the witness's unreliable and unconvincing testimony based on the totality of the record, the evidence and the witness' recollection, demeanor, and other factors. **ECF No. 233** at 10; **ECF No. 230**. Once again, the Court heard and saw the witness face to face. It did not find the testimony credible nor sufficient.

The ninth proposed finding also claims that the Court "omitted" "material testimony" proffered by Bonilla-Rivera, as a bank teller.[17] **ECF No. 233** at 10. That is not true. *See* **ECF No.**

---

December 2008, three to four people each week ask her whether Cooperativa de Ahorro y Crédito Oriental is a subsidiary or part of Oriental Bank. [] According to Delgado, when she explained there is no affiliation between Oriental and Cooperativa, customers say, oh, but they have the same name because they think Cooperativa is part of the bank […] or as a retail financial institution." **ECF No. 233** at 9.

[16] "Eight Amendment Request: ORIGINAL: She also mentioned having heard of similar confusions at the Branch, involving questions regarding check cashing and loan offers, id. at 95. [] PROPOSED: She also mentioned having heard of similar confusions at the Branch, involving questions regarding check cashing and loan offers […] estimated that around one or two check cashing incidents occur each day, while incidents involving loan offers occur around once a week." **ECF No. 233** at 10.

[17] "Ninth Amendment Request: ORIGINAL: Bonilla-Rivera testified that in 2012, while working for the bank in Humacao, she never met a client who mistook the bank for defendant's credit union. [] Bonilla had also worked at the Oriental Bank Branches in Guayama and Aibonito. [] PROPOSED: Bonilla-Rivera testified that in 2012, while working for the bank in Humacao, she never met a client who mistook the bank for defendant's credit union. Id. at 23. However, she testified that, upon seeing the Cooperativa during her time working at Oriental Bank's Humacao branch, she initially believed that the credit union and the bank were related entities because they both shared the name "Oriental." **ECF No. 233** at 10.

**230**. Finding that Bonilla-Rivera's testimony is not credible and unreliable does not mean that the Court "omitted" material parts of his testimony. Instead, it means that the Court exercised its discretion and disregarded the portions of the testimony it did not find credible, reliable, sufficient, or relevant. As it relates to Bonilla's testimony, the witness was clear that in four (4) years of employment she never encountered a client who confused the Branch for the credit union. Plaintiffs' proposed amendment invites the Court to support a factual determination of confusion on Delgado's personal misconceptions.

Exercising its discretion, the Court did not find most of plaintiffs' witnesses' testimony credible or reliable. The Court is under no obligation whatsoever to copy and paste the entirety of the hearings' transcripts to accommodate plaintiffs wishes. Likewise, the Court is under no obligation to copy and paste testimonies it does not deem credible. Despite plaintiffs' inconformity, the Court's findings are supported by the evidence and stem from this Court's discretion, assessment of the relevance and weight of the testimony and the witness' demeanor.

The same goes for plaintiffs' proposal 10 through 13. **ECF No. 233**.[18] The Court's finding is supported by the evidence and based on its assessment of the witnesses' credibility and

---

[18] "Tenth Amendment Request: ORIGINAL: Bonilla-Rivera testified further, that a customer once came to the bank to buy a concert ticket. When told that the bank didn't sell the tickets, the client made a phone call and determined that the tickets were being sold by the Cooperativa. The customer then asked if both entities were the same. [] PROPOSED: Bonilla-Rivera testified further that at the Bairoa branch she has received clients who came to the bank looking to buy concert tickets. [] When asked about the connection between these individuals and Cooperativa, she explained that when the first person who came by the bank to purchase tickets was told that said tickets are not sold at the bank, the client made a phone call and determined that the tickets were being sold by the Cooperativa. The customer then asked if both entities are the same." **ECF No. 233** at 11. "Eleventh Amendment Request: ORIGINAL: According to González, over the past three years, only one or two customers have asked her whether the credit union is affiliated with Oriental Bank. [] PROPOSED: According to González, over the past three years,

demeanor. For example, in plaintiffs' tenth proposal, the implications highlighted by plaintiffs are not clearly supported by the evidence; as clearly stated at **ECF No. 233**, the testimony was unclear as to whether plaintiffs' witness encountered more than one client seeking to purchase tickets at her branch. **ECF Nos. 233** at 11-12; **188** at 24. All circumstances considered, her demeanor, recollection, hesitation while testifying to specific questions, and other factors noted by the Court during the testimony, the Court did not find the testimony credible.

Plaintiffs' fourteenth proposal (asking the Court to include the year 2013) is unnecessary.[19] The Court's findings reflect the fact that defendant's Bairoa Branch in Caguas

---

only one or two customers have asked her whether the credit union is affiliated with Oriental Bank. [] Nevertheless, González testified that the credit union has not established any procedures in order to record these incidents because they are considered by Cooperativa to be irrelevant." **ECF No. 233** at 12. "Twelfth Amendment Request: ORIGINAL: Ayala testified that, since she first started to work for the Cooperativa as a teller in 2001, she has had only one client ask, whether the credit union is affiliated with Oriental Bank (and the client wanted reassurance that the credit union is not). [] Intriguingly, Ayala recalled that, at the Cooperativa's Centro Comercial Branch in Humacao, Banco Popular clients would routinely show up at the credit union, on the third of each month, to cash their Social Security checks into their Banco Popular accounts. [] PROPOSED: Ayala testified that, since she first started to work for the Cooperativa as a teller in 2001, she has had only one client ask, whether the credit union is affiliated with Oriental Bank (and the client wanted reassurance that the credit union is not). [] However, Ayala could not attest for a fact that all of the employees of Cooperativa have not dealt with incidents of confusion with Oriental Bank. [] Intriguingly, Ayala recalled that, during the two or three months in which she worked at the Cooperativa's Centro Comercial Branch in Humacao, Banco Popular clients would sometimes show up at the credit union, on the third of each month, to cash their Social Security checks into their Banco Popular accounts." **ECF No. 233** at 13. "Thirteenth Amendment Request: ORIGINAL: Ángel Rodríguez-Virella ("Rodríguez"), the Executive President of the Cooperativa for the past thirteen and one-half years, testified that the credit union uses its full name 95% of the time and shortens its name to Cooperativa Oriental or Coop Oriental only if there is a limitation of space. [] PROPOSED: Ángel Rodríguez-Virella ("Rodríguez"), the Executive President of the Cooperativa for the past thirteen and one-half years, testified that defendant uses the logo containing the credit union's full name, most of the time and shortens its name to Cooperativa Oriental or Coop Oriental only if there is a limitation of space." **ECF No. 233** at 14.

[19] "Fourteenth Amendment Request: ORIGINAL: According to Rodríguez, the credit union currently budgets approximately $650,000 per year for advertising, which amounts to an increase of approximately $250,000 to $300,000 per year since 2010. [] PROPOSED: According to Rodríguez, the credit union currently budgets approximately $650,000 per year for advertising, which amounts to an increase of approximately $250,000 to $300,000 per year since 2010. Id. at 166. Rodríguez further explained that Cooperativa's Caguas Bairoa branch was opened approximately three years prior to the 2016 hearings, which would be around 2013." **ECF No. 233** at 14.

was new, that the advertising budget was the current one, and that defendant's advertising budget increased every year since 2010 (which, of course, includes the year 2013). **ECF Nos. 233** at 14-15; **230** at 7, n.14. Furthermore, the Court rejects plaintiffs' subsequent proposal (15) because the record and the evidence support the Court's characterization of the witness's testimony, namely that he believed the referenced amount of time to be inordinate from a radio-advertising perspective. **ECF Nos. 233** at 15; **230** at 22; **190** at 28-29. In addition, the Court's findings are based on the Court's assessment of credibility.

The Court's findings challenged in a superficial fashion by plaintiffs' proposed fact number 15 properly communicates the point plaintiffs highlight: that defendant had, at times, deviated from the Court-approved logo.[20] **ECF Nos. 233** at 15-16; **230** at 21-22. Last but not least (plaintiffs' sixteenth and seventeenth proposed finding),[21] the Court notes that its ruling enjoining defendant "from using, in commerce, the marks COOPERATIVA ORIENTAL, COOP ORIENTAL, and ORIENTAL POP in connection with any of its goods and services," encompasses defendant's use of the additional service marks that contain the marks

---

[20] "Fifteenth Amendment Request: ORIGINAL: Hernández testified that using the Cooperativa's full name or its Court-approved logo is not always feasible because squeezing the logo within an already defined space can "completely distort the logo, and the repeated use of the credit union's full name in audio advertising (which by the advertisement industry's standards may range from 15 seconds to not more than 60 seconds); can take up inordinate amounts of time. [] PROPOSED: Hernández testified that using the Cooperativa's full name or its Court-approved logo is not always feasible because squeezing the logo within an already defined space can completely distort the logo, and use of the credit union's full name in audio advertising (which by the advertisement industry's standards may range from 15 seconds to not more than 60 seconds) can take up to five seconds." **ECF No. 233** at 15.
[21] "Sixteenth Amendment Request: ORIGINAL: none. PROPOSED: Hernández admitted, during cross-examination, that there were certain instances where Cooperativa could have used the Court approved logo but it instead opted to utilize different logos containing abbreviated versions of Cooperativa's name as part of its preferred marketing strategy." **ECF No. 233** at 16.

COOPERATIVA ORIENTAL and COOP ORIENTAL identified by plaintiffs under this bullet (**ECF No. 233** at 16-17)—<u>COOP ORIENTAL</u> MORTGAGE, SEGUROS <u>COOPERATIVA ORIENTAL</u>, <u>COOPERATIVA ORIENTAL</u> TE ASISTE. **ECF Nos. 230** at 41 (emphasis added). Additional findings to that effect are thus not necessary.

Regardless of the fact that the Court deemed the testimony not credible and unsupported, plaintiffs also opine the Court ought to include several additional findings to the ones they already challenged. *See* "Specific Findings of Applicable Facts." **ECF No. 233** at 17-21. Notably however, plaintiffs did not include specific proposed finding or language to that extent. Instead, plaintiffs simply questioned the Court's rulings and findings of fact.

These unspecified, proposed new findings are not based on the record. First of all, the Court's finding and credibility determination are consistent with the record and based, *inter alia*, on the assessment of the witness's demeanor, foundation, bias, recollection, and over-all credibility. Finally, the Court declines to adopt other parts of plaintiffs proposed additional findings because they contain legal conclusions. **ECF No. 233** at 21. Based on all the above, the Court denies plaintiffs' requests to amend/alter/expand its findings. The Court's findings are supported by the record, foreclosing relief under Rule 52(b).

Thus, the Court now evaluates plaintiffs' Rule 59(e) motion for reconsideration of its request to enjoin defendant from using any iteration of the ORIENTAL mark, the permitted

logos, and its full corporate name is also denied.[22] Plaintiffs' Rule 59(e) argument depends, for the most part, on the Court's acceptance of plaintiffs' factual proposals above (both the ones that included a proposed text and the ones that on questioned the Court's findings), which the Court uniformly rejects.

Factual proposals aside, plaintiffs' request also mises the mark. For years, plaintiffs have conceded to this Court and the Court of Appeals that the marks they now challenge are non-infringing. *See* **ECF Nos. 60** at 4; **65, 113, 157, 166**.

Despite plaintiffs' eleventh-hour position, the Court stands by its analysis in the November 2020 Opinion and Order. **ECF No. 230**. There is no indication that so-called-newly discovered evidence, as discussed below, warrants Rule 59(e) relief. Likewise, the Court was not required to conduct the "likelihood of confusion" analysis sought by plaintiffs for marks plaintiffs had conceded (almost for a decade) were non-infringing, particularly where the evidence did not support a change in circumstances prompting plaintiffs' about-face on its repeated concessions. Accordingly, there is no manifest error to be corrected under Rule 59(e). Plaintiffs' Rule 59(e) request is denied.

Likewise, plaintiffs' alternative request for a new trial under Rule 59(a) is denied. Plaintiffs rely on the premise that courts have discretion to modify a permanent injunction if

---

[22] Defendant asserts this argument is beyond the scope of the Court of Appeals' mandate on remand. **ECF No. 247** at 2**.** The Court agrees.

circumstances change. **ECF No. 253** at 12-13. However, plaintiffs have not presented any indication of any such changes.

First, the Court ordered plaintiffs to show cause "as to as to why it '[is] not precluded from a) claiming that defendant's use of a Court-approved logo, or any other logo that uses its full corporate name, infringes [its] service-mark rights, and b) requesting the injunction of any such logo… the Court-sanctioned logo or any other mark featuring Cooperativa's full name." **ECF No. 181** at 1. Pursuant to plaintiffs' own words and representations, their new, blanket request (to enjoin defendant from using any iteration of the word "Oriental") purportedly stems from the "evidence gathered in connection and **presented during the evidentiary hearing**." **ECF No. 181** at 1 (emphasis added). According to plaintiffs, the new injunction is supported on "evidence **presented** at the hearing has proven that: (1) there have been changes in circumstances that warrant the modification of the injunction, and (2) the original injunction is not achieving its principal objective, which was to dispel likelihood of confusion." *Id*., at 11 (emphasis added). Therefore, pursuant to plaintiffs' representations, the evidence in support of the injunction enjoining defendant from using the Court-approved logos and its full corporate name was available, "gathered," and "presented" during the evidentiary hearing.[23] Plaintiffs'

---

[23] Plaintiff further conceded: "[w]hile preparing for the [2016] evidentiary hearing [plaintiffs] **became aware** that the Court-sanctioned logo has not been enough to dispel the likelihood of confusion among customers… it has also become evident that the source of actual confusion is not limited to… the logo, but rather to its use of the ORIENTAL mark." **ECF No. 182** at 12. The Court heard and evaluated all the evidence and the testimony. However, it did not deem the witnesses credible. Plaintiffs cannot have a second turn at an evidentiary hearing simply because their evidence was deemed insufficient.

discontent with this Court's rulings and discretion in determining that plaintiffs' witnesses were not credible and did not establish the ground for further relief is not a valid excuse, much less a lawful one, for a new trial. Indeed, plaintiffs seek a second bite at the apple.

Second, if plaintiffs had additional evidence (issue they did not raise during or after the evidentiary hearing), they should have presented it. Indeed, according to plaintiffs, the need to enjoin defendant from using its full name ("change in circumstances") became evident during a particular point in time: defendant's "us[e] the Court-sanctioned logos since February 2011." **ECF No. 181** at 11. Thus, evidence in support of a request to expand the injunction beyond the remand was available (and plaintiffs knew about it) before the evidentiary hearing held on November and December 2016.

Third, even if the Court examined plaintiffs' affidavits appended with their post-hearing motions, *See* **ECF Nos. 233-2** to **232-7**, the fact remains that the affidavits describe situations that occurred before the Court granted an expanded injunction issued in this Court's November 2020 Opinion and Order, **ECF No. 230**. There is no reason to conclude that the expanded relief granted in November 2020 will not address the concerns raised in the affidavits.

Plaintiffs are well-aware, "[i]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to plaintiffs," requiring courts to "closely tailor injunctions to the harm that they address." **ECF No. 230** at 30 (citations and internal quotation marks omitted). Moreover, plaintiffs' argument raises for the Court concern that

plaintiffs seek to use Rule 59 to satisfy an expanding business-oriented desire, rather than an expanding need, for further relief.

Lastly, even if the Court disregarded plaintiffs' long-running admission (*i.e.* Defendant's full corporate name is non-infringing), it would reach the same conclusion. A trademark prevailing party needs to show that the "infringing use[] is likely to cause consumer confusion." *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 12 (1st Cir. 2008). For years, plaintiffs have conceded that they "ha[ve] not objected that [defendant] be allowed to continue operating under its full corporate name — Cooperativa de Ahorro y Crédito Oriental — since it is not **confusingly similar**." **ECF No. 113** at 17 (emphasis added). Plaintiffs' years-long representations, to both this Court and the Court of Appeals, are enough to deny plaintiffs' new and oppressive request.

But even if the Court ignored all the above, plaintiffs' request falls short of the threshold. It is axiomatic that likelihood of confusion is a factual issue examined under eight *numerus apertus* factors. *Dorpan, S.L. v. Hotel Meliá, Inc.*, 728 F.3d 55, 64 (1st Cir. 2013). As stated in *Oriental I*, "(1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark." *Oriental I*, 698 F.3d at 17.

Considering the *numerus apertus* nature, the Court is well within its right to consider as an additional factor the fact that for many years plaintiffs conceded that defendant's full

corporate name is non-infringing or, at least, "not confusingly similar." **ECF No. 113** at 17.

Accordingly, relief under Rule 59(a) is denied; there is no indication that the Court's ruling was

"against the law, against the weight of the credible evidence, or tantamount to a miscarriage of

justice." *See Crowe*, 506 F.3d at 19 (citation and internal quotation marks omitted).

### D.     Contempt, ECF No. 246

Plaintiffs request the Court hold defendant in contempt for violation of the 2010 order

enjoining it from using orange trade dress. In support and highlighting their concern, plaintiffs

make reference to the 2016 evidentiary hearing testimony of a witness who had seen checks

bearing defendant's name in orange text. **ECF No. 233** at 25. Plaintiffs also note that defendant

failed to comply with the Court's clear and firm direction in the November 2020 Opinion and

Order that defendant attain full compliance with the injunction and file a report attesting thereto

within 60-days, by January 19, 2021. **ECF No. 246** at 2.

In civil contempt proceedings, a court must find that the order disobeyed was clear and

unambiguous. *See Star Fin. Servs., Inc. v. AASTAR Mortg. Corp.*, 89 F.3d 5, 13 (1st Cir. 1996).

"[G]ood faith, or the absence of willfulness, does not relieve a party from civil contempt in the

face of a clear order." *Id*. at 13. Impossibility of compliance, in the face of an overbroad or unclear

order, is a defense to civil contempt. *Id*. at 13-14.

The Court declines to impose contempt based on plaintiffs' citation of a single witness's

testimony simply recalling seeing orange trade dress on a check. However, defendant is granted

30 days from the date of this Order to submit its "report in writing under oath setting forth in

detail the manner and form which defendant has complied with [the] modified injunction." *See*

**ECF No. 230** at 41. Defendant shall also show cause as to why the Court should not impose a

$5,000 sanction or other relief. Further disagreement with the terms of this Court's November

2020 ruling will not be entertained or tolerated.

## IV.    CONCLUSION

The Court hereby orders:

- Plaintiffs' request to alter/amend/new trial is **DENIED**. **ECF No. 233**.

- Defendant is granted 30 days to submit its "report in writing under oath setting
  forth in detail the manner and form which defendant has complied with [the]
  modified injunction." *See* **ECF No. 230** at 41. Defendant shall also show cause as to
  why the Court should not impose a $5,000 sanction or other relief. Accordingly,
  Plaintiffs' motion for contempt at **ECF No. 246 is NOTED**; *see* **ECF No. 261**.

- In light of the above, **ECF Nos. 271, 262** are **MOOT**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of September, 2022.

                                        **S/AIDA M. DELGADO-COLÓN**
                                        **United States District Judge**