## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

ORIENTAL FINANCIAL GROUP,
INC., et al.,

     Plaintiffs,

     v.                                         Civ. No. 10-1444 (ADC)

COOPERATIVA DE AHORRO Y
CRÉDITO ORIENTAL,

     Defendant.

## OPINION AND ORDER

Pending before the Court are Cooperativa de Ahorro y Crédito Oriental's ("defendant")
objections (**ECF No. 284**) to the report and recommendation ("R&R") entered by U.S. Magistrate
Judge Bruce J. McGiverin ("Magistrate Judge"). **ECF No. 283**.[1] The Magistrate Judge
recommends that the Court grant in part and deny in part Oriental Financial Group, Inc.;
Oriental Financial Services Corp.; and Oriental Bank and Trust's (collectively, "plaintiffs")
motions for enforcement of permanent injunction and requests for sanctions.

In essence, the Magistrate Judge determined that defendant violated the modified
injunction issued in this trademark case by featuring its domain name in advertising, using
plaintiffs' protected marks in sports promotion, advertising, and in other contexts. **ECF No. 283**

---

[1] Plaintiffs did not object to the Magistrate Judge's findings and recommendations.

For the following reasons, defendant's objections to the R&R at **ECF No. 284** are **OVERRULED in PART AND SUSTAINED IN PART**. Accordingly, the R&R at **ECF No. 283** is **ADOPTED in PART**.

## I.    Procedural Background[2]

Plaintiffs' motions came before the Court after a long procedural travail, which the Court will dare summarize below.

### A.    The beginning

Over a decade ago, plaintiffs filed the instant action asserting, in its relevant part, causes of action for "service mark infringement under the Lanham Act and Puerto Rico law[.]" *Oriental Fin. Group, Inc. v. Cooperativa de Ahorro y Crédito Oriental*, 698 F.3d 9, 14 (1st Cir. 2012)("*Oriental I*")(quotation marks omitted).[3] Specifically, "[plaintiffs] alleged that [defendant]'s COOP ORIENTAL name is confusingly similar to [plaintiffs'] ORIENTAL Marks, and that [defendant]'s COOP ORIENTAL logo... is confusingly similar with the ORIENTAL Marks." *Id*. Plaintiffs also challenged defendant's rights over its internet domain ("cooporiental.com") alleging it constituted "cybersquatting" in violation of 15 U.S.C. § 1125(d). *Id*., at 14-15.

---

[2] For a more detailed and definitive background, the Court refers to its ruling at **ECF No. 230, 272** and the Court of Appeals' *Oriental Fin. Grp., Inc. v. Cooperativa De Ahorro y Crédito Oriental* (*Oriental II*), 832 F.3d 15 (1st Cir. 2016).

[3] In the complaint, plaintiffs included the following causes of action: "FIRST CAUSE OF ACTION: SERVICE MARK INFRINGEMENT UNDER LANHAM ACT § 43;" "SECOND CAUSE OF ACTION: CYBERSQUATTING IN VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT;" "THIRD CAUSE OF ACTION: UNFAIR COMPETITION UNDER LANHAM ACT § 43;" "FOURTH CAUSE OF ACTION: SERVICE MARK DILUTION UNDER LANHAM ACT § 43(c);" "FIFTH CAUSE OF ACTION: VIOLATION OF PUERTO RICO TRADEMARK ACT OF 2009;" "SIXTH CAUSE OF ACTION: UNFAIR METHODS OF COMPETITION UNDER PUERTO RICO LAW[.]"**ECF No. 1**.

Ultimately, plaintiffs moved to permanently enjoin defendant from "(1)… (a) directly or indirectly infringing any of [plaintiffs'] rights in the ORIENTAL Marks… by use of: (i) the term ORIENTAL, including stylized depictions thereof; (ii) any composite trademark that includes the term ORIENTAL; or (iii) any composite trademark, including design marks and slogans, that comprises the term ORIENTAL[,]" as well as damages. *Id*.

Eventually, then District Court Judge José A. Fusté held an evidentiary hearing.[4] Following the evidentiary hearing, the Court entered judgment granting in part and denying in part plaintiffs' claims and requests for injunctive relief. Before reaching the merits of the claims, however, the Court denied defendant's laches defense based on a set of facts that, over the years have become ever more salient given plaintiffs' piecemeal litigation tactics.

To wit, defendant's laches defense did not prosper because the Court found that the relevant events began in 2009. To wit, the Court noted that their "submissions to the court indicate their view that the infringing activity began in 2009, with [d]efendant's deployment of its new logo and advertising campaign." **ECF No. 54** at 7. Thus, the Court opined that plaintiffs' true objective was to challenge the status quo created by defendant's 2009 new marketing, advertising, and branding efforts. Accordingly, the Court did not consider a potential laches

---

[4] The parties consented to the conversion of the hearing into a "bench trial on the merits of Plaintiff's claims, as to liability only." **ECF No. 54** at 2.

argument against all iterations and uses of the word ORIENTAL (which is exactly what plaintiffs have sought in their numerous requests for expanded injunction since, at least, 2016).[5]

After clearing the laches hurdle and limiting its purview to post 2009 events, the Court then addressed the legal requirements for protection under federal trademark law. The Court first noted that "[i]nsofar as 'Oriental' is a common word applied to [p]laintiffs' financial services as a mark, we find that it is an arbitrary mark that merits protection under federal trademark law." **ECF No. 54** at 9. It next determined that there were instances of actual consumer confusion, which led the Court to conclude that defendant's "mark and dress" constituted infringement under section 1125(a). After discussing other elements, the Court found "that an injunction preventing [d]efendant from using its current mark and dress is necessary to prevent further harm." *Id.*, at 12 (emphasis added).

Consequently, the Court granted plaintiffs a "limited" permanent injunction ordering defendant to cease "all use of its new 2009 logo (which used the COOP ORIENTAL mark with an orange trade dress), but allowed [defendant] to revert back to using its pre-2009 logo (also containing the COOP ORIENTAL mark, but with a different trade dress)." **ECF No. 54** at 15. The Court did not "address the likelihood of confusion posed by the COOP ORIENTAL mark or

---

[5] In other words, and to be perfectly clear, plaintiffs post-2016 requests (including for expanded injunction enjoining all iterations and uses of the mark Oriental) could arguably be impeded by laches, estopped, or even time barred. *See Oriental Financial Group, Inc. v. Cooperativa de Ahorro y Credito Oriental*, 698 F.3d 9, n.8 (1st Cir. 2012)(*quoting inter alia* "[l]aches does not necessarily constitute a conclusive and automatic bar to injunctive relief in trademark actions. However, in many instances, the delay may be so prolonged and inexcusable that it would be inequitable to permit the plaintiff to seek injunctive relief as to future activities." *Seven–Up Co. v. O–So–Grape Co.*, 283 F.2d 103, 106 (7th Cir. 1960). But, since this issue is not presently before the Court, the Court need not give it a second though herein.

other similar marks." *Oriental I*, at 15. After issuing its ruling, the Court then scheduled a follow-up conference to evaluate defendant's compliance with the injunction.

### B.    First request for expanded injunction

A day before the status conference, plaintiffs moved to amend the judgment and modify the injunction by expanding it. *See* **ECF No. 60**. To wit, among other requests, plaintiffs asked the Court to reverse its finding that the use "COOP ORIENTAL" per se was not infringing. In support, plaintiffs argued that such determination was inconsistent with the finding that the "ORIENTAL" mark was strong. *Id.*, at 3-4. As such, plaintiffs requested to also require "that [d]efendant's new mark and trade dress include the full name 'Cooperativa de Ahorro y Crédito Oriental[,]' and; (2) clarify that the option given to defendant to 'revert to the mark and dress it used prior to 2009' excludes any such use of the abbreviated term COOP ORIENTAL or the logo used prior to 2009." **ECF No. 60** at 4.

During the November 18, 2010 status conference, defendant "submitted several proposed new logos for the court's approval." *Id*. Assisted by counsel and in the presence of the parties, the Court made markings on the Court-approved logos while crossing out the ones rejected. *Id.*; **ECF No. 61**.[6]

---

[6] The minutes of proceedings held on November 15, 2010 read as follows: "[c]ounsel for plaintiffs informed that they have received some proposals from the defendant regarding new logos. The Court marked in red some logos, and informed that the ones marked should be considered for the final logo (see attached) and that the web site can remain as it is… It appears the parties considered the proposals and the Court's recommendation. Case concluded by the parties' consensus and Judgment entered on March 10, 2011. ECM-ECF No. 61 and 82."

After the conference, plaintiffs filed a supplemental memorandum in support of their motion to amend the injunction. *See* **ECF Nos. 60, 65**. The Court denied plaintiffs' request to enjoin defendant from using all but defendant's full corporate name. **ECF No. 68**. The Court then held a hearing to rule upon any "remaining issue." **ECF No. 74.** On February 17, 2011, the Court indicated: "all pending issues were resolved. Judgment will be entered." **ECF No. 78**. Judgment was entered on March 10, 2010. **ECF No. 82**.

### C.    *Oriental I*

In October 2012, the First Circuit vacated in part this Judgment to the "extent that the district court found that [plaintiffs] did not assert claims of infringement based on [defendant]'s use of the Coop Oriental and similar marks." *Oriental I* at 24. The case was "remand[ed] to the district court to determine whether the COOP ORIENTAL mark and similar marks create a likelihood of confusion, and to fashion an appropriate injunction if a likelihood of confusion is established." *Id*. The appeals court also pointed that "the district court should also consider whether the COOPERATIVA ORIENTAL mark (and other potentially infringing usages of the ORIENTAL mark) poses a likelihood of confusion[,]" the Court of Appeals added. *Id*. at 19.

On remand, the parties declined to conduct further discovery or participate in another evidentiary hearing. Via brief, plaintiffs requested that "other than its full corporate name, [defendant] should be permanently enjoined from using the word marks COOP ORIENTAL and COOPERATIVA ORIENTAL, as well as any other confusingly similar derivatives or variants." **ECF No. 113** at 4.

In November 2014, the Court found there was "no basis to broaden the injunctive relief" to the extent plaintiffs requested. At that juncture, the Court declined to enjoin defendant from using the word marks "Coop Oriental," "Cooperativa Oriental," and the "names" "Oriental POP" and "Club Orientalito." Judgment was entered accordingly. **ECF Nos. 145-146.**

### D. Oriental II

Plaintiffs again appealed. The First Circuit reversed and remanded for a second time. It pointed out that plaintiffs' federal action sought "injunctive relief against [defendant] to prevent the use of, inter alia, 'any composite trademark that includes the term ORIENTAL.'" *Oriental Fin. Grp., Inc. v. Cooperativa De Ahorro y Crédito Oriental (Oriental II)*, 832 F.3d 15, 21 (1st Cir. 2016)(emphasis added). The Court of Appeals then determined that defendant's "COOP ORIENTAL, COOPERATIVA ORIENTAL, and ORIENTAL POP marks [] infringe on [plaintiffs'] rights in the ORIENTAL mark." *Oriental II,* at 37 (emphasis added). Accordingly, the Court of Appeals remanded and ordered the Court to "reassess equitable factors… flowing from the infringement." *Id.* Thereafter, the case was assigned to the undersigned on remand. **ECF No. 154**.

Plaintiffs filed a memorandum in support of their request for an expanded injunction on remand. **ECF No. 157**. A response and a reply followed. **ECF Nos. 160, 166.** Plaintiffs clarified the injunction would only "require [defendant] to use… its full corporate name." **ECF No. 157** at 18.

### E.    Another request for an expanded injunction

In light of those representations and in accordance with the remand, the Court held a six-day evidentiary hearing to determine whether the injunction should be expanded to cover the infringements outlined by the Court of Appeals (*i.e.* "COOP ORIENTAL, COOPERATIVA ORIENTAL, and ORIENTAL POP marks"). However, according to plaintiffs a new infringement occurred during the hearing. To wit, plaintiffs raised a new challenge to two 2010 Court-approved logos and, more generally, to the use of ORIENTAL in defendant's full corporate name *Id.*, at 50.[7]

Because this new request technically fell outside the scope of *Oriental II*'s remand, on November 29, 2016, the Court ordered plaintiffs to show cause why they were "not precluded… from contesting… the Court-approved logos[.]" **ECF No. 174**. Plaintiffs filed a motion in compliance. *See* **ECF Nos. 181**, **182.** Relying on the evidence they submitted during the evidentiary hearing, plaintiffs argued (in hindsight) they had shown several changes in circumstances that, in their view, warranted a modification of the permanent injunction beyond the scope of the remand. However, not only did they moved against the use of the Court-approved logos, but they also move the Court to enjoin defendant from using any iteration of the "ORIENTAL" mark. In other words, to enjoin defendant's from using even their full

---

[7] Back in 2010, plaintiffs asserted their willingness to accept the logos which were a composite of marks, comprised of a green-and-brown image of two hands next to defendant's full name in green and black, with COOPERATIVA and ORIENTAL stacked on top of each other in large font and DE AHORRO Y CRÉDITO placed in between them in small font. *See* **ECF No. 61**. None of the plaintiffs oppose, object to, or otherwise respond to defendant's adoption of the logos.

corporate name. *See* **ECF No. 182**. Defendant opposed. **ECF Nos. 197, 213**. Plaintiffs replied. **ECF Nos. 202, 203**.

After a careful review of the record, the Court entered an Order "(i) den[ying] plaintiffs' Rule 60(b)(5) motion, **ECF No. 182**; and (ii) [granting in part and denying in part] plaintiffs' motion for expanded injunctive relief[,]" while indicating that, the Court's written Opinion was to follow. **ECF No. 226**. Plaintiffs did not wait for the Court's written Opinion and Order to file a notice of appeal. **ECF No. 227**; **USCA Case No. 18-2111**. The Court then entered its Opinion and Order. **ECF No. 230**.

In its Opinion and Order at **ECF No. 230**, the Court granted in part and denied in part plaintiffs' pending motions at **ECF Nos. 157, 182**.[8] Specifically, it modified "its earlier injunction, **ECF No. 54**, by expanding it to cover [d]efendant's use of its COOPERATIVA ORIENTAL, COOP ORIENTAL, and ORIENTAL POP marks," enjoining "[d]efendant from using, in commerce, the marks COOPERATIVA ORIENTAL, COOP ORIENTAL, and ORIENTAL POP in connection with any of its goods and services." **ECF No. 230** at 41 (emphasis added). The Court permitted Defendant to "continue to use the Court-approved logos" identified at **ECF No. 61** with an important caveat: to "respect the relative font sizes and proportions set forth in those

---

[8] In **ECF No. 182,** plaintiffs requested a "modif[ication] [of the] the permanent injunction to bar [defendant] from using the Court-sanctioned logos with its full name, any other logo with its full name, and from using the ORIENTAL mark altogether; and that [defendant] be ordered to adopt a new name, for marketing and advertising purposes, that does not contain the word ORIENTAL."

logos, especially with regard to the size of the words 'de Ahorro y Crédito' vis-à-vis the size of the words 'Cooperativa' and 'Oriental.'" **ECF No. 230** at 41.

Importantly, however, the Court denied plaintiffs' novel and last-minute request to enjoin defendant from using any iteration of the ORIENTAL mark, the logos approved by the Court and parties in 2010, and defendant's full corporate name.[9] Based on the portions of the testimonies deemed credible, the Court questioned plaintiffs' timing and the strength of their argument for expanded injunctive relief. The Court also noted that plaintiffs' requests seemed to stretch beyond the scope of the remand and, ultimately, determined that plaintiffs were not entitled to the new request for expanded injunction. *Id.* at 39. Among other reasons, the Court found that "[p]laintiffs' reliance on the speculation of one of their witnesses [was] particularly ill-placed," and rejected plaintiffs' claim that they "became aware" of the need for this broader relief "[w]hile preparing for the evidentiary hearing" and upon eliciting the testimony of their witness during the hearing. **ECF Nos. 182** at 2; **230** at 38-39. The Court also rejected plaintiffs' implication that "whenever a party uses a single infringing mark, every other mark the party uses must also be infringing when there is proof of actual confusion." **ECF No. 230** at 39 (emphasis added).

Finally, the Court ordered defendant to file a report under oath setting forth in detail the manner and form in which defendant has complied with this modified injunction pursuant to 15 U.S.C. § 1116. *Id.*

---

[9] *See inter alia* **ECF No. 182**.

### F.     Yet another request for expanded injunction

Still unsatisfied with the expanded injunction, plaintiffs moved to alter/amend the Court's findings and ruling at **ECF No. 230** or, alternatively, for a new trial pursuant to Federal Rules of Civil Procedure 52(b) and 59(a), (e). **ECF No. 233**. Meanwhile, defendant moved (several times) for extensions of time to comply with this Court's order and a couple of weeks later moved to stay the case pending appeal. **ECF No. 236, 238, 240**. After the ensuing responses, replies, and motions to strike, the Court denied defendant's request for stay pending appeal. **ECF No. 261**. Defendant then responded to plaintiffs' motion for enforcement of permanent injunction. **ECF No. 265**.

In their motion to alter judgment, plaintiffs argued that the Court applied the wrong legal standard in its ruling, resulting in the Court's "erroneous" denial of their broader request for injunction, such as the one requested at **ECF No. 182**, which included their blanket request to stop defendant from doing business altogether. **ECF No. 233** at 3. Alternatively, they moved to supplement the record with evidence of consumer confusion that they allegedly accumulated since the 2016 evidentiary hearing. *Id*. In support, plaintiffs incorporated by reference their previous filings at **ECF Nos. 157**, **182**. In a separate docket entry, while the above described motions were pending, plaintiffs also moved the Court to find defendant in contempt. **ECF Nos. 233** at 25; **246**. Plaintiffs again moved for enforcement and requesting the Court to adjudicate their pending motions to amend the judgment or to order new trial. **ECF No. 271**.

The Court entered an Opinion and Order addressing these matters. **ECF No. 272**. Therein, after a substantial discussion of the case and the record, the Court denied plaintiffs' request to alter or amend judgment and for new trial. **ECF No. 233**. However, the Court ordered defendant to submit a "report in writing under oath setting forth in detail the manner and form which defendant has complied with [the] modified injunction." *See* **ECF No. 230** at 41; **ECF No. 272**. The Court also ordered defendant to show cause as to why it should not impose a $5,000 sanction or other relief. Accordingly, the Court "noted" plaintiffs' motion for contempt at **ECF No. 246**; *see* **ECF No. 261** and denied as moot their subsequent filings **at ECF Nos. 271, 262**.

On November 3, 2022, defendant filed a motion in compliance arguing that it has observed and complied with this Court's permanent injunction. **ECF No. 273**. Plaintiffs filed a response thereto. **ECF No. 275**. On February 9, 2023, the Court entered an Order stating that the "controversy of defendant's compliance… and all related filing, including among others, ECF Nos. 272, 273, 275, 276, are hereby referred to a United States Magistrate Judge for the issuance of a Report and Recommendation." **ECF No. 277**.

At this point, it is worth noting that on February 3, 2023, plaintiffs filed a motion informing the Court of Appeals that, in light of this Court's Opinion and Order, *id*., they wished to voluntarily dismiss a notice of appeal filed back in 2018. However, as relevant here, plaintiffs "reserve[d] the right to file a new notice of appeal in the event that the district court makes any determination that is inconsistent with the 2020 Order and adverse to Oriental, including its pending ruling(s) on Cooperativa de Ahorro y Crédito Oriental's ("Cooperativa's") Motion in

Compliance with Order (**ECF No. 273**) and Oriental's request for sanctions against Cooperativa for violation of the modified permanent injunction (**ECF No. 275**)." **Court of Appeals Case No. 18-2111, Document 47** at 2-3.[10]

### G.    The R&R and the pending objections

On May 16, 2023, the Magistrate Judge handed down his R&R. **ECF No. 283**. Defendant filed timely objections. **ECF No. 284**. Plaintiffs opposed. **ECF No. 285**. A month later, however, plaintiffs charged again and filed yet another motion for enforcement. **ECF No. 286**.[11]

## II.    Legal Standard

United States Magistrate Judges are granted authority to make recommendations on pretrial matters dispositive of a claim or defense, while the ultimate resolution of dispositive motions remains at the discretion of the presiding judge. *See*, 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(a), (b)(1); *accord* L. Civ. R. 72(a)(7) to (9). Any party adversely affected by the recommendation issued may file written objections within fourteen (14) days of being served with the report and recommendation. Fed. R. Civ. P. 72(b). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." *Sylva v. Culebra Dive Shop*, 389 F. Supp. 2d 189, 191–92 (D.P.R. 2005) (citing *United States v. Raddatz*, 447 U.S. 667, 673 (1980)). "The district

---

[10] Notably, as conceded by plaintiffs, the Court denied plaintiffs' motion at **ECF No. 182** requesting an expansion of the injunction to cover all iterations of the ORIENTAL mark. **Court of Appeals Case No. 18-2111, Document 47** at 2. Therefore, the right plaintiffs "reserved" is to file a "notice of appeal" in connection with this Court's ruling on the motions for "enforcement" of the injunction. *Id*.

[11] This piece-meal tactic, which seems to characterize plaintiffs, is addressed further below.

court need not consider frivolous, conclusive, or general objections." *Rivera–García v. United States,* Civ. No. 06–1004 (PG), 2008 WL 3287236, *1 (D.P.R. Aug. 7, 2008) (citing *Battle v. U.S. Parole Comm'n,* 834 F.2d 419 (5th Cir. 1987)).

Moreover, to the extent the objections raised amount to no more than general or conclusory objections to the report and recommendation, without specifying to which issues in the report the party is objecting, or where the objections are repetitive of the arguments already made to the magistrate-judge, a *de novo* review is unwarranted. *Id.* (emphasis supplied). "Instead, the report and recommendation is reviewed by the district judge for clear error." *Id.* (citing *Camardo v. Gen. Motors Hourly–Rate Employees Pension Plan,* 806 F. Supp. 380, 382 (W.D.N.Y. 1992) ("It is improper for an objecting party to ... submit[ ] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a R & R.")).

In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate-judge." 28 U.S.C. § 636(b)(1); *see also, Templeman v. Chris Craft Corp.,* 770 F.2d 245, 247 (1st Cir. 1985); *Alamo Rodríguez v. Pfizer Pharma., Inc.,* 286 F. Supp. 2d 144, 146 (D.P.R. 2003). Hence, the court may accept those parts of the report and recommendation to which the party does not object. *See, Hernández–Mejías v. General Elec.,* 428 F. Supp. 2d 4, 6 (D.P.R. 2005) (citing *Lacedra v. Donald W. Wyatt Detention Facility,* 334 F. Supp. 2d 114, 125–26 (D.R.I. 2004)). The Court, however, "is not required to make

separate findings of fact or issue an opinion setting forth its own reasoning." *U.S. v. Bach*, 388 F.

App'x 2 (1st Cir. 2010) (citing *Jonco, LLC v. ALI, Inc.*, 157 F.3d 33, 35 (1st Cir. 1998).

**III.    Discussion**

As explained before, the Court referred all motions concerning defendant's compliance

with this Court's injunction, as well as plaintiffs' related filings for sanctions and other relief, to

the Magistrate Judge for evaluation and the issuance of an R&R. **ECF No. 277**. The R&R

recommends:

> For the reasons discussed below, Cooperativa's motion in compliance
> should be DENIED. Oriental's motion to prohibit Cooperativa from
> featuring the domain name cooporiental.com in advertisements (as
> opposed to using it as its internet URL) should be GRANTED. Aside from
> allowing Cooperativa to use cooporiental.com as its internet URL,
> Oriental's request to prohibit Cooperativa from using the "Cooperativa
> Oriental," "Coop Oriental," and "Oriental Pop" marks in connection with,
> without limitation, its website, social media handles and accounts, and
> sports team sponsorships should be GRANTED. Oriental's request to allow
> it to perform limited discovery to ensure Cooperativa is complying with the
> court's order regarding use of font sizes should be DENIED. However,
> Oriental's request to find Cooperativa in contempt of court should be
> GRANTED. Lastly, Oriental's request for sanctions not lower than $10,000
> should be DENIED, but this court should impose sanctions of $5,000.

**ECF No 283** at 1-2. Only defendant filed timely objections. Therefore, pursuant to Fed. R. Civ. P.

72(b)(3), and after a careful review of the totality of the record, the Court hereby **ADOPTS** all

the portions of the R&R that were not objected to by defendant. Thus, the Court is tasked with

the evaluation of defendant's objections.

Defendant grouped together its objections for purposes of discussion and divided its arguments under two main headings: "[t]he magistrate judge erred in determining that trademark use is not an element of a violation of the court's order[;]" **ECF No. 284** at 3, and "Cooperativa Oriental was never put on notice that its use of cooporiental.com or the use of the Cooperativa Oriental as the username on social media was considered infringing conduct…" *Id.*, at 7. For sake of clarity, the Court will slice the issues raised in defendant's objections as thin as practicable tracking the discussion of the challenged R&R.

A.    **Defendant's Internet URL**[12]

(i)    **"COOP ORIENTAL" in the defendant's URL, domain or Internet address**

The controversy before the Court (*i.e.*, defendant's objections to the R&R) essentially flows from defendant's motion at **ECF No. 273**, wherein it asserted that except for certain impressions of the COOPERATIVA ORIENTAL mark made by mistake,[13] it has been in full compliance with the injunction as modified. **ECF No. 273.** More specifically, as relevant here, defendant contended that "the only places where the 'CoopOriental' phrase is used… are in its domain name (www.cooporiental.com) and in its Facebook URL (facebook.com/cooporiental)." *Id.*, at 2.[14] According to defendant, that use of the mark is permitted because the Court

---

[12] For purposes of uniformity, the Court clarifies that "URL" stands for "Uniform Resource Locator" and will be used interchangeably with the terms "domain name" or "Internet address," all of which refer to www.cooporiental.com.

[13] **ECF No. 273** at 4 "This error was immediately rectified upon being pointed out and Cooperativa Oriental has sought to remove all copies of this logo from its social media and other marketing materials in which it could have been included." Since plaintiffs did not object to the R&R, the Court will not address this issue any further.

[14] Issues concerning social media handles and platforms will be addressed in a separate section.

"specifically ruled that [it] could continue using the www.cooporiental.com domain name" and, by extension, the Facebook URL or social media, as well. *Id*. In the alternative, defendant argued that the use of the URL does not constitute trademark use or service mark and is, ergo, not barred by trademark statutes. *Id*., at 2.

The Magistrate Judge clearly recommended that plaintiffs' "request to prohibit [defendant] from featuring the domain name… in the body of any advertisements or promotional or marketing materials (**as opposed to using it as its internet URL, as it appears on web browsers**) be granted." **ECF No. 283** at 8-9 (emphasis added).[15]

In their response to defendant's objections, however, plaintiffs request that the Court enjoin defendant from doing exactly what the Magistrate Judge recommended the Court allow: using its URL or domain name. *See* **ECF No. 285** at 14 ("does not entitle [defendant] to use the cooporiental.com domain name, be it in advertising or its URL"); ("[t]hus, regardless of the Court's ruling in 2010 with respect to [plaintiffs'] cybersquatting claim, [defendant] is now precluded from continuing to use the cooporiental.com domain name[.]") *id*., at 14. This argument evinces, once again, that plaintiffs are "playing fast and loose" with the Court. Much like they did before, when plaintiffs manufactured an issue with defendant's full corporate name where there was previously none, (*see* **ECF No. 272**), they now seek to enjoin defendant

---

[15] To be sure, the Magistrate Judge recommends "Oriental's motion to prohibit Cooperativa from featuring the domain name cooporiental.com in advertisements (**as opposed to using it as its internet URL**) should be granted." **ECF No. 283** at 1 (emphasis added).

from what they have recognized as fair game for many years: defendant's use of its URL or domain name.

Notably, however, plaintiffs did not request any relief against defendant's domain name during the multiple evidentiary hearings held in this case or in their many motions referred to the Magistrate Judge, including plaintiffs' motions for enforcement, contempt, and sanctions. Indeed, in their November 22, 2022 filing, plaintiffs originally requested enforcement of the modified injunction, **ECF No. 275**. There, contrary to what they now claim, they conceded that "the Court determined… that [d]efendant may use the cooporiental.com domain name as its internet URL[,]" thus, plaintiffs requested an order "prohibiting [d]efendant from featuring the domain name cooporiental.com in the body of any advertisements or promotional or marketing materials (**as opposed to using it as its internet URL, as it appears on web browsers**)[.]" **ECF No. 275** at 14, 15 (emphasis added). Based on plaintiffs' representations, the Magistrate Judge noted in the R&R that "[plaintiffs] concede[] that [defendant] is allowed to use the URL www.cooporiental.com". *See* **ECF No. 283** at 8.

Aside from plaintiffs' questionable gamesmanship, the fact remains that plaintiffs did not file an objection to any portion of the R&R, including the recommendation that the Court not sanction defendant for using the domain name. Because it is black letter law that the Court may accept those parts of the report and recommendation to which a party does not object, and considering plaintiffs' double-talk, the Court, as stated before, adopts all portions of the R&R that were not objected to by the parties. *Hernández–Mejías v. General Elec.*, 428 F. Supp. 2d 4, 6

(D.P.R. 2005). Therefore, defendant is not enjoined from using its URL or Internet domain name ("www.cooporiental.com") as its Internet address.

**(ii)    Defendant's URL in advertising**

Defendant also challenge the Magistrate Judge's recommendation that "[t]hough this court previously allowed Cooperativa to keep its URL… I do not see how using a URL containing the term 'Coop Oriental' in advertisements comports with this court's order barring Cooperativa from using that term." **ECF No. 283** at 8. Importantly, the Magistrate Judge recommended the Court find defendant in contempt of Court due to, among others, his "finding [that] Cooperativa's use of its URL in advertisements violates the injunction." *Id*. But does it?

The answer requires the Court to analyze the issues step by step. First, the Magistrate Judge correctly identified that a finding of civil contempt requires "clear and convincing evidence that: '(1) the alleged contemnor had notice of the order, (2) the order was clear and unambiguous, (3) the alleged contemnor had the ability to comply with the order, and (4) the alleged contemnor violated the order.' *Rodríguez–Miranda v. Benin*, 829 F.3d 29, 46 (1st Cir. 2016)(cleaned up). There is no question that "the moving party [must] establish[] by clear and convincing evidence that the alleged contemnor violated the order despite clear and unambiguous notice of the order and the ability to comply with it." *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 426 (1st Cir. 2015)(*citing Hawkins v. Dep't of Health & Human Servs. for N.H., Comm'r*, 665 F.3d 25, 31 (1st Cir. 2012). The Court must find that the "the words of the court's order have clearly and unambiguously forbidden the **precise conduct** on which the

contempt allegation is based." *U.S. v. Saccoccia*, 433 F.3d 19, 28 (1st Cir. 2005)(emphasis in the original). In order to make that finding, the Court evaluates "whether [defendant] [was] able to ascertain from the four corners of the order **precisely** what **acts** are forbidden." *Id.*, (citing *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 76 (1st Cir. 2002)(emphasis added).

The specific text of the order at issue enjoins defendant "from using, in commerce, the marks COOPERATIVA ORIENTAL, COOP ORIENTAL, and ORIENTAL POP in connection with any of its goods and services." **ECF No. 230** at 41. Alluding to the text of the order, plaintiffs argue that the terms of the injunction as modified are "clear[,]" and "[t]hat language could not be broader." **ECF No. 285** at 9. Such a breadth, plaintiffs seem to construe, includes the accused use. However, "[t]he question is not whether the order is clearly worded as a general matter[.]" *U.S. v. Saccoccia*, 433 F.3d at 28. But rather, if the "order [has] clearly and unambiguously forbidden the **precise conduct**." *Id.* (emphasis added).

Plaintiffs may be of the opinion that the injunction's text is "broad" and "clear," but they cannot argue that the order "clearly and unambiguously forbid[s]" defendant from including its URL in its advertising (*i.e.* "the precise conduct"). Thus, for purposes of the R&R's contempt discussion, the injunction does not clearly and unambiguously forbid defendant from including its URL in its advertising or marketing. To be sure, plaintiffs did not raise an issue or request any relief in connection with defendant's URL in their filing at **ECF No. 157**, which they repeatedly argue the Court granted *in toto* when it expanded the injunction in November 2020.

*See* **ECF No. 285**.[16] Neither did plaintiffs request any relief in connection with defendant's use of its URL in their December 18, 2020 "motion for amended and additional findings of fact and to amend the judgment or, in the alternative, for new trial" at **ECF No. 233,** filed right after the Court entered the November 2020 expanded injunction. **ECF No. 230**.

Setting those hints of laches aside, and even if this Court's rulings could be construed to preclude the accused use, the fact remains that defendant was not precluded from using its domain name in the first place. Therefore, it could not be "clear" from the injunction Order that defendant could not feature its domain name in the way it did.

This conclusion is further supported by the principles of interpretation that govern this phase of the litigation where the Court ought to be careful in its reading of the banned conduct. Indeed, "judicial contempt power is a potent weapon," therefore, "ambiguities in a court's order must be read in a light favorable to the person charged with contempt[.]" *KPM Analytics North America Corporation v. Blue Sun Scientific, LLC*, 578 F.Supp.3d 101, 104 (D.Mass., 2021)(*quoting Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967) and *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 16 (1st Cir. 1991)). At a minimum, it was not "clear" that defendant could not feature its domain name in its advertising and marketing materials.

---

[16] While true that this Court's Opinion and Order at **ECF No. 230** granted plaintiffs' motion at **ECF No. 157**, it did not however incorporate *all* the language proposed by plaintiffs in their filing. *See generally E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1297 (9th Cir. 1992)("… we must insure that it is tailored to eliminate only the specific harm alleged. An overbroad injunction is an abuse of discretion" (citing *Lamb–Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 973 (9th Cir. 1991)).

Finally, the Court will briefly address the Magistrate Judge's skepticism as to this particular use of defendant's domain name. *See* **ECF No. 283** at 8 ("I do not see how using a URL… comports with this court's order barring Cooperativa from using that term[.]") The Magistrate Judge's doubts stem from *Oriental II*'s finding that COOP ORIENTAL and COOPERATIVA ORIENTAL infringe on plaintiffs' trademark rights. However, in that same Opinion, the Court of Appeals also clarified that "[i]njunctive relief does not flow automatically from a finding of trademark infringement… The decision to grant or deny expanded injunctive relief rests in the discretion of the district court, to be exercised consistent with well-established principles of equity." *Oriental II*, at 37. Exercising that discretion, the Court did grant plaintiffs an expanded injunction. *See* **ECF Nos. 230, 272**. However, the Court did not "clearly" or "unambiguously" enjoin defendant from using its domain name. Nor did plaintiffs request as much back then. Therefore, despite the Magistrate Judge's rhetorical statement, the fact remains that the injunction did not clearly enjoin defendant in this manner.

Finally, one cannot lose sight of the fact that the Court's "authority to issue a contempt order derives from its inherent power to sanction… litigation abuses which threaten to impugn the district court's integrity or disrupt its efficient management of [case] proceedings." *United States v. Kouri–Pérez*, 187 F.3d 1, 7 (1st Cir. 1999). Based on the totality of the record, the Court cannot find that defendant has been abusive or has threatened to impugn the Court's integrity by making reference to its URL or domain name in advertising, marketing or promotional material (without featuring its controversial elements prominently, of course).

Accordingly, the Court **DENIES** the Magistrate Judge's recommendation to find defendant in contempt of Court for including its URL in its advertising or marketing.[17]

**B.    The marks: COOP ORIENTAL and COOPERATIVA ORIENTAL**

**(i)    Defendant's use of the marks in a "non-trademark" sense**

In its objections, defendant argues that it has not stepped over the infringement line because the accused use of the infringing marks was not made in a trademark or service mark sense. **ECF No. 284** at 3. Citing trademark treaties, and within, decisions by the Sixth Circuit Court of Appeals, defendant contends the marks must be used in a trademark or service mark sense in order to constitute a violation of law or this Court's injunction. *See id*. (claiming such use "is an essential element."). "When it is not used in [the trademark] context, but rather to identify a person's own business, it is a trade name. Nothing in the Lanham Act provides that trade name use is exclusive of trademark use." *Id*. at 4.

However, this argument is far from a slam-dunk. It was first raised by defendant in the filings referred to the Magistrate Judge. *See* **ECF No. 283**. In its R&R, the Magistrate Judge properly addressed the issue and ultimately dismissed it. Specifically, the R&R clarifies that the supporting authority included in defendant's filings deals with the requirements to obtain protection (*inter alia*, registration) for a designation or symbol, not to determine if a junior user's use of the mark infringes upon the senior user's trademark rights. Being the case that the First

---

[17] However, this ruling may not be construed as a *carte blanche* for defendant to circumvent the injunction under the cloak of its URL or domain name.

Circuit already determined that plaintiff's marks were protected, *Oriental II*, the legal authority proffered by defendant does little for the Court to find otherwise. **ECF No. 283** at 4-6.

Contrary to defendant's theory, the R&R also pointed out that the Sixth Circuit, the only Circuit that has adopted a similar trademark use requirement, has conceded that its unique ruling (requiring trademark use in any infringement discussion) could be mistaken. Notably, the Sixth Circuit has opined that "plaintiffs carry a threshold burden to show that the defendant is using a mark in a trademark way that identifies the source of their goods." *Sazerac Brands, LLC v. Peristyle, LLC*, 892 F.3d 853, 859 (6th Cir. 2018)(cleaned up). This position, upon which defendant's argument relies, has been heavily bombarded with criticisms from the Second, Fourth, and Federal Circuits, as well as McCarthy on Trademarks and Unfair Competition § 23:11.50 (5th ed.) ("McCarthy"). The Sixth Circuit recognizes its position as an outlier and has even conceded that "the critics may have a point." *Id.*

Moreover, the Magistrate Judge concluded that the "McCarthy treatise… dismisses that argument elsewhere, observing: [T]he Lanham Act nowhere states that 'use as a trademark' is required for an accused use to be an infringement." **ECF No. 283** at 5. Indeed, this Court adds, much like the test McCarthy announces as the appropriate one,[18] the Supreme Court has generally stated "a competitor's use does not infringe a mark unless it is likely to confuse consumers." *United States Patent and Trademark Office v. Booking.com B. V.*, 140 S.Ct. 2298, 2307

---

[18] "The test of the Lanham Act is that infringement is caused when there is a likelihood of confusion." 4 McCarthy, *supra*, Sec. 23:11.50.

(2020). Because defendant failed to raise an argument supported by convincing legal authorities, the Court declines its invitation to adopt in this Circuit an outlier interpretation that is not supported by the text of the relevant statute. *See Kelly–Brown v. Winfrey*, 717 F.3d 295, 305–08 (2nd Cir. 2013); *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 168–70 (4th Cir. 2012).  Accordingly, the fact that defendant made use of the marks only as a "name" (even if true)[19] does not shield it automatically from potential liability under a trademark injunction.

But this only deals with one of defendant's legal arguments. Under this Court's *de novo* review, the Court will now evaluate the rest of the arguments and factual underpinnings to determine if the injunction was not observed in connection with the infringing marks.

**(ii)    Sports Team Usage**

The R&R reports that defendant admitted using the infringing marks in an advertising campaign during Puerto Rico's National Superior Basketball ("NSB") league's 2021 season in violation of the injunction. **ECF No. 283** at 6. The R&R further details how this Court had already "addressed [defendant]'s argument that Puerto Rico's sports teams would suffer if an injunction were issued… It later warned, further disagreement with the terms of this Court's November 2020 ruling will not be entertained or tolerated." **ECF No. 283** at 6. Thus, the R&R recommends the Court find defendant in violation of the injunction.

---

[19] Plaintiffs convincingly argue that the accused uses (*i.e.* promotion in sporting events, etc.) could qualify as "trademark use" depending on the circumstances and context of each instance. **ECF No. 285** at 4-5. Yet, because defendant's argument is wrong on its merits, there is no need for the Court to dwell on such marginal issues.

Claiming that using the marks as "names" was not in violation of the injunction (an argument denied above), defendants objected to the R&R's recommendation and further added that it stopped using the mark on "advertising in the digital courtside barriers" and "in the uniforms for the sports teams it sponsors" for the NSB 2022 season. **ECF No. 284** at 5; 273 at 9. Yet, it failed to submit any evidence regarding its inability to comply during the 2021 NSB season. *Hawkins v. Department of Health and Human Services for New Hampshire, Com'r*, 665 F.3d 25, 31 (1st Cir. 2012)("[…](3) the alleged contemnor had the ability to comply with the order[.]")(*quoting United States v. Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005)(internal quotation marks omitted)).[20]

Neither did defendant lay the grounds for the Court to assume that compliance with the November 2020 Opinion and Order was, at least, impracticable for purposes of the NSB's 2021 season. To wit, defendant did not proffer the dates in which it submitted the BSN 2021's artwork for the courtside barriers and teams' jerseys advertising. *See* **ECF Nos. 273; 273-1; 284**.

Moreover, even if the Court read defendant's objections generously, any possible claim that the "clear and unambiguous" terms of the injunction did not bar the use of the marks in a non-trademark use for purposes of sporting events is also unavailing considering the full record of this case. Since the issuance of this Court's expanded injunction, the Court specifically

---

[20] Although showing of this requirement is incumbent upon the movant, *Hawkins v. Department of Health and Human Services for New Hampshire, Com'r*, 665 F.3d at 31 ("To prove civil contempt, a movant must show…"), as explained below, in this particular case the Court had specifically ruled that defendant had to cease and desist from using the marks in connection with sports teams' advertisement or sponsorships, thereby shifting the burden to defendant.

determined "[a]lthough… **sponsorship of sports teams might suffer** if [defendant] can no longer visually market itself by using the infringing marks… **the Court does not doubt that both defendant and the sports teams will survive through alternate means of advertising and sponsorship**." **ECF No. 230** at 36 (emphasis added). The Court even noted that close to 50% of defendant's advertising budget was spent on the sponsorship of sports teams and that the infringing marks were "regularly used" for such purposes. *Id*., at 39.

Therefore, the Court finds defendant disobeyed the injunction by using the infringing marks (*see Oriental II*) in sports advertisement during the NSB's 2021 season, and thus **OVERRULES** defendant's objection to the R&R's recommendations in this regard, which are hereby **ADOPTED**. However, the Court clarifies that defendant's violation of the injunction is limited to NSB's 2021 season, since defendant submitted evidence that it stopped using the marks after that season. *See* **ECF No. 273-1** at 12, 13, 14, 15, 16, 17, 18.

(iii)    **Social media handles or vanity URL**

The R&R next reports that defendant defends its use of "cooperativaoriental_pr" and/or "Coop Oriental" or "Cooperativa Oriental" as its Instagram handle or username and as a Facebook URL. **ECF No. 283** at 7-9. As to the use to the latter two, defendant justified its use of the infringing marks as a necessity to be able to comply with the software's character limits. *Id*., at 7. Likewise, defendant argued that these platforms "truncate" posts exceeding certain character limits. Moreover, it contended that "even non-truncated posts receive less engagement if they surpass just fifty characters." **ECF No. 283** at 7. As to the Instagram handle, the R&R

reports that defendant only argued that it had a right to use the marks as its Facebook URL to the same degree and for the same reason it was allowed by the Court to use its domain name. *Id.*, at 10. The Magistrate Judge recommends that the Court deny these arguments and find that defendant further violated the injunction in these aspects as well. *Id*. Accordingly, the Magistrate Judge also recommended the Court find defendant in contempt for this reason.

In its objection, defendant first posits that its use of social media "usernames" (including the infringing marks) "does not constitute trademark use[,]" therefore, "their inclusion in… advertising cannot constitute a violation of the modified injunction." **ECF No. 284** at 7. However, as discussed before, this argument is meritless and deserves no more ink.

In its second argument, defendant takes issue with the timing in which plaintiffs elevated their requests against the use of the marks in defendant's social media platform and within defendant's website. **ECF No. 284** at 12-13, 15. Specifically, they argue that plaintiffs failed to raise these concerns in several of their most recent filings. For example, *inter alia*, defendant points to several exhibits attached to plaintiffs' filings wherein plaintiffs accused defendant of violating the injunction but remained "silent regarding the use [of the marks] as the name of the Facebook account." **ECF No. 284** at 13; **157** at 10; Exhibit 1 **ECF No. 262-1** at 3; **ECF No. 284** at 14, **ECF No. 262**, n.25. Defendant also anticipated undue prejudice if it is forced to use the complete corporate name in social media handles and usernames. **ECF No. 284** at 15-6.

However, plaintiffs point to several instances in which, throughout the years have alluded[21] to injunction violations via social media account handles or usernames. To name a few, even back when this Court held evidentiary hearings in 2016, plaintiff explained to the Court: "[defendant] created a Facebook profile under the Cooperativa Oriental name… so they basically appropriated Oriental's mark." **ECF No. 188** at 53. The issue with social media handles or usernames was also discussed and defended by defendant in the 2021 filings. Since then, defendant has conceded that "[plaintiffs] also point[] to the fact that CoopOriental's Facebook page still bears that name Cooperativa Oriental… changing such fundamental things as the name on a Facebook page can have grave results[.]" **ECF No. 250** at 6. Because of the potential "grave results," defendant moved to stay the effects of the injunction. *Id*. The Court, however, denied such request. **ECF No. 272** at 16 (while the Court "sympathize[d] with some of the potential negative impact the order may have, the Court is unmoved."). Therefore, much like the discussion surrounding the sports team's patronage, here too it is clear that, even if the injunction's text did not explicitly include such preclusion, defendant knew quite well it needed to make arrangements as to their social media handles and usernames.

Finally, defendant did not challenge in any meaningful way (or "specific" for purposes of Fed. R. Civ. P. 72) the Magistrate Judge's discussion about the difference between a website's

---

[21] Defendant does have a point here. The truth of the matter is that (as they continue to do to this date) plaintiffs did not *properly* move for relief against those matters as they did with other infringements. Indeed, plaintiffs of-the-cuff remarks are far from a developed request for relief. The Court will take this into consideration when determining the sanction to be imposed on defendant herein.

URL or domain *vis a vis* social media handles and user names. To be sure, the Magistrate Judge explained that courts in "Washington and California have considered this issue and both agree with Oriental's argument that "vanity URLs," or "post-domain paths" are not generally considered domain names under the ACPA." **ECF No. 283** (citing *United Fed'n of Churches, LLC v. Johnson*, 522 F. Supp. 3d 842, 850 (W.D. Wash. 2021); *Jones v. Hollywood Unlocked, Inc.*, 2022 WL 18674459, at *25 n.30 (C.D. Cal. Nov. 22, 2022)). Therefore, this Court's ruling on defendant's URL does not extend to social media for purposes of this litigation.

### (iv)    Marks buried in the text social media and advertising

Aside from defendant's social media usernames, handles or vanity URLs which were addressed above, the Magistrate Judge also concluded that defendant's use of a shorthand ("Cooperativa Oriental") in social media posts or advertising were also in violation of the injunction. **ECF No. 283** at 7-9. However, this particular issue is moot considering that in its motion in compliance at **ECF No. 273**, defendant "inform[ed]… that, in order to reduce any controversies regarding its use of the "Cooperative Oriental" phrase, it has instituted the following changes in its advertising and marketing policies[…] (b.)… include its full corporate name within the text of its social media advertising." *Id.*, at 8-10.

Moreover, the exhibits included by plaintiffs in their opposition to defendant's motion in compliance are all in the Spanish language.[22] Thus, plaintiff's shortcomings are enough to deny

---

[22] Pursuant to 48 U.S.C. § 864, "[a]ll pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language." L. Civ. R. 5 requires that "[a]ll documents not in the English language which are presented or filed, whether as evidence or otherwise, must be accompanied by a

any request that relies on said documents. But even if the Court analyzed only the marks (which, of course are in the Spanish language) in abstraction of what the document actually says, it is clear that the marks are buried within the rest of the text and in no way, shape, or form could be likely to create any sort of consumer confusion.[23]

But more importantly, plaintiffs do not even suggest the use of the marks in such context (which the Court cannot ascertain because plaintiff failed to submit certified translations) is anywhere near the "likelihood of confusion" border. *See* **ECF No. 275**. Instead, plaintiffs simply apply an arithmetical approach to conclude that because the marks ("Coop Oriental" or "Cooperativa Oriental") have been found to be infringing, then all uses are likewise infringements. Yet, not all uses by a junior user are in violation of the law. For example, junior users are allowed, within certain parameters, of course, to use a mark if it is a descriptive term.[24] *Warner Publication v. Popular Publications*, 87 F.2d 913, 915 (2nd Cir. 1937)("The defendant has as good a right to a descriptive title as has the plaintiff. All that the plaintiff can demand is that defendant shall use its title in such a manner as to distinguish its magazine from the plaintiff's

---

certified translation into English prepared by an interpreter certified by the Administrative Office of the United States Courts." The United States Court of Appeals for the First Circuit requires strict enforcement of the English language requirement where the untranslated document is key to the outcome of the proceedings. *Puerto Ricans for Puerto Rico Party v. Dalmau*, 544 F.3d 58, 67 (1st Cir. 2008). Allowing non-English document would be "at odds with the premise of a unified and integrated federal courts system." *Id.* Therefore, district courts should not consider such documents. *González–De–Blasini v. Family Department*, 377 F.3d 81, 89 (1st Cir.2004).

[23] Specially, in a scenario like this one, when the consumer would first need to access defendant's web site or social media platform to encounter this non-confusing use of the marks among the text of defendant's literature or promotional materials.

[24] "A junior user is always entitled to use a descriptive term in good faith in its primary sense." 2 McCarthy § 11:45 (5th ed.).

and thus prevent deception of the purchasing public."); *see also Visible Systems Corp. v. Unisys Corp.*, 551 F.3d 65, 77 (1st Cir. 2008)(declaring that the district court acted within its discretion even if the "trial record disclosed no use in the relevant field of 'visible' as a descriptive term"). This is specifically so, when the descriptive quality lies in in its geographical location, such as, for example, "Oriental."

Moreover, as discussed many times over by this Court, *see* **ECF Nos. 230, 272**, plaintiffs have long conceded that defendant's full corporate name, for example, is not infringing. *See, also, Oriental II*, at 21 ("this claim did not include Cooperativa's full name, which Oriental concedes is non-infringing"). Thus, it is not the mark *per se* that carries the infringement, but rather the use of the mark when such use is likely to confuse consumers. *United States Patent and Trademark Office v. Booking.com B. V.*, 140 S.Ct. at 2307 ("a competitor's use does not infringe a mark unless it is likely to confuse consumers."); "[A] plaintiff must establish… that the allegedly infringing use is likely to cause consumer confusion." *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 12 (1st Cir. 2008).

Because plaintiffs carry the burden of proving that defendant is in contempt of Court, the Court cannot find defendant in contempt for the non-predominant use of the marks buried within what appears (because no certified translation was included by plaintiffs) to be promotional material. After all, the Magistrate Judge did find: "I see no meaningful difference between those logos and the ones Oriental highlights in its motion… Further, I see no difference

between the supposedly objectionable logos and those with which Oriental apparently has no

issue… [defendant] has not violated this court's order regarding font sizes." **ECF No. 283**.

## IV.    Conclusion

Finally, a word on the plaintiffs' chosen litigation strategy. Plaintiffs have come to this

court countless times to seek either an expansion or enforcement of the injunction.[25] Normally,

there would be nothing untoward about a party seeking the court's protection to enforce a

judicial decree in its favor or an expansion of such decree pursuant to trademark rights. The

problem, however, is that plaintiffs have sought to add and keep adding prohibitions that could

have been raised years ago to the point that it seems to this Court that they are following a "death

by a thousand cuts" strategy. This drip-by-drip approach is not only judicially inefficient, but

subjects the defendant to a seemingly never-ending threat of relitigating alleged infringements

that occurred years ago—and only because the overzealous plaintiffs has "unearthed" matters

that should have been brought much earlier in this process. As shown above, some of the claims

raised by plaintiffs fit properly within the contours of injunctive. But others fall way short of that

description, and it looks to this Court like plaintiffs' only goal in raising them here (at this stage)

is punitive.[26] As warned several times before, **ECF Nos. 230, 272**, plaintiffs walk a fine line, one

---

[25] Notably, as discussed before, plaintiffs did not file a notice of appeal against this Court's denial of the last request for injunction expansion. **ECF Nos. 230, 272**.  Instead, they now only seek enforcement of the latest version of the injunction decree. *Id*.

[26] Plaintiffs have only themselves to blame for their shortcomings throughout these years.

that this Court will not hesitate to carefully police and defend with sanctions, monetary or not.[27]

Plaintiffs have been warned.

In light of all the above, the Court hereby orders:

- The R&R at **ECF No. 283 is ADOPTED IN PART and REJECTED IN PART** as described herein before.

- The motion in compliance at **ECF No. 273 is NOTED**.

- The response at **ECF No. 275 is NOTED**.

- Due to defendant's violations to the injunction as described in detailed before, and in light of the Magistrate Judge's recommendations and this Court's warnings, defendant is hereby sanctioned to pay $2,500.00, which it shall deposit no later than October 20th, 2023.

- On even date, defendant shall file evidence of compliance with the injunction as explained herein.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 29th day of September, 2023.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**

---

[27] *See generally* Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading, written motion… under the circumstances: (1)… improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation[…]").